110 T.C. No. 17


UNITED STATES TAX COURT


ESTATE OF ROBERT W. QUICK, DECEASED, ESTHER P. QUICK,
PERSONAL REPRESENTATIVE, AND ESTHER P. QUICK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8588-97.                      Filed March 16, 1998.


        P was a limited partner in a partnership subject
to the unified audit and litigation provisions of the
Tax Equity and Fiscal Responsibility Act of 1982
(TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324,
648.  R issued notices of computational adjustment to
Ps, pursuant to which deficiencies for taxable years
1987 through 1990 were assessed.  In the computational
adjustment notices for 1989 and 1990, R recharacterized
Ps' distributive share of partnership losses for those
years as passive for purposes of sec. 469, I.R.C.  R
thereafter issued affected items notices of deficiency
to Ps for 1987 through 1990 in which additions to tax
and accuracy-related penalties were determined, based
on the computational adjustments.  Secs. 6653(a)(1)(A)
and (B), 6659, 6661, 6662(a), I.R.C.  Ps moved for
summary judgment, claiming that the period of
limitations for assessment for 1989 and 1990 has
expired such that Ps' share of partnership losses

cannot be recharacterized as passive, and that Ps are entitled to, among other things, refunds for overpayments as well as net operating losses for those years based on favorable adjustments at the partnership level for 1989 and 1990. R objects to Ps' motion. Both Ps and R moved to amend their respective pleadings pursuant to Rule 41, Tax Court Rules of Practice and Procedure.

1. <u>Held</u>: Ps' motion for leave to file amendment to petition and R's motion for leave to file amendment to answer are granted. Rule 41(a), Tax Court Rules of Practice and Procedure.

2. <u>Held</u>, <u>further</u>, Ps' motion for summary judgment denied; the statutory period of limitations does not preclude R's recharacterization of Ps' distributive share of partnership losses for 1989 and 1990 as passive losses subject to the limitations set forth in sec. 469, I.R.C. Secs. 6229(a) and (d), 6230(a)(2)(A)(i), I.R.C.

<u>Kevin M. Bagley</u> and <u>Mitchell B. Dubick</u>, for petitioners.

<u>Gretchen A. Kindel</u>, for respondent.

OPINION

NIMS, <u>Judge</u>: This matter is before the Court on the following three motions: (1) Petitioners' Motion for Leave to File Amendment to Petition pursuant to Rule 41(a); (2) respondent's Motion for Leave to File Amendment to Answer pursuant to Rule 41(a); and (3) petitioners' Motion for Summary Judgment filed pursuant to Rule 121.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years at

issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined additions to, and penalties on, the Federal income tax of petitioners for the taxable years 1987 through 1990 as follows:

|  | | Additions to Tax | | | Penalties |
| Year | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6659 | Sec. 6661 | Sec. 6662(a) |
| 1987 | $3,253 | 50 percent of the interest due on $65,053 | $6,284 | $11,031 | |
| 1988 | 727 | | 1,824 | 2,114 | |
| 1989 | | | | | $8,423 |
| 1990 | | | | | 19,293 |

The issues for decision are:

1.  Whether to grant the parties' respective motions to amend their pleadings; and

2.  Whether the statutory period of limitations bars respondent from recharacterizing petitioners' distributive share of partnership losses as passive losses subject to the limitations set forth in section 469.

Petitioners resided in West Palm Beach, Florida, at the time they filed their petition.

### Background

The background facts related below are derived from the pleadings, the exhibits attached thereto, and other materials in the Court's records, including the uncontroverted written representations of the parties.  To the extent we draw inferences

and conclusions of a factual nature, they are based upon materials forming a part of the record.

During the years at issue, Robert W. Quick (Robert) was a limited partner in Water Oaks, Ltd. (Partnership), a Florida limited partnership. (Robert died on or about May 23, 1997, shortly after the petition was filed. On July 11, 1997, petitioners moved, pursuant to Rule 63, to substitute Esther P. Quick as the personal representative for the Estate of Robert W. Quick. Petitioners' Motion for Substitution of Party was granted by Order of the Court dated July 15, 1997, and the caption was amended accordingly.) At all relevant times, the Partnership was a so-called TEFRA partnership whose tax treatment is determined under the unified partnership audit and litigation provisions (subchapter C of chapter 63) added by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648.

The Partnership owned and operated the Water Oak Estate Mobile Home Park (Park) in Lady Lake, Florida. During the years at issue, a portion of the lots located in the Park was leased to mobile home owners, while the remaining lots were in the process of development.

Petitioners reported their distributive share of losses from the Partnership as passive losses on their joint Forms 1040, U.S. Individual Income Tax Return, for 1987 and 1988. (The record does not reflect the extent of such losses for those years.)

Petitioners reported losses from the Partnership of $331,425 (32 percent of $1,035,702 total partnership loss) and $400,125 (32 percent of $1,250,391 total partnership loss) on their joint 1989 and 1990 returns, respectively, as nonpassive losses.

On September 8, 1994, respondent wrote a letter to petitioners' representative admonishing petitioners to file amended returns for 1989 and 1990 "to reflect the proper treatment of the losses from * * * [the Partnership]" as passive, or face the issuance of a notice of deficiency for those years. The general 3-year period of limitations for making assessments for 1989 and 1990, as extended by Form 872, Consent to Extend the Time to Assess Tax, expired on June 30, 1995. No amended returns were filed by, and respondent did not issue a deficiency notice to, petitioners prior to that date.

On November 14, 1994, respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) disallowing certain deductions claimed by the Partnership for its taxable years 1987 through 1990. Blaine B. Quick, a partner other than the TMP, petitioned this Court at docket No. 4745-95 on March 27, 1995.

On March 13, 1996, the Court entered a decision (Decision) in docket No. 4745-95. The Decision sets forth adjustments to certain partnership items which are favorable to respondent for the years 1987 and 1988, and favorable to the Partnership for the years 1989 and 1990. Specifically, the Decision adjusts losses reported on line 21, Ordinary income (loss) from trade or

business activities, of the Partnership's Forms 1065, U.S.
Partnership Return of Income, for 1987 through 1990 as follows:

| Year | Adjustment |
|------|------------|
| 1987 | $1,070,445 |
| 1988 | 677,229 |
| 1989 | (311,234) |
| 1990 | (290,088) |

Under the Decision, petitioners' share of Partnership losses was
increased to 48 percent of the adjusted Partnership losses for
1989 and 1990, or $646,529 and $739,430, respectively.
Petitioners subsequently filed Forms 1040X, Amended U.S.
Individual Income Tax Return, for taxable years 1989 and 1990.
Applying the adjustments contained in the Decision to their
original returns, petitioners claimed overpayments in the amounts
of $71,602 and $12,889, and net operating losses of $68,270 and
$278,658, for 1989 and 1990, respectively.  Petitioners also
filed amended returns for 1987 and 1988, claiming overpayments in
the amounts of $93,467 and $19,689, respectively, as a result of
net operating loss carrybacks from 1989 and 1990.

On February 19, 1997, respondent made computational
adjustments on Forms 4549-A, Income Tax Examination Changes, to
petitioners' taxable years 1987 through 1990.  For 1987 and 1988,
the computational adjustments reflect the adjustments to
partnership items set forth in the Decision for those years, and
determine deficiencies in the amounts of $65,053 and $14,538,
respectively.  For 1989 and 1990, respondent determined

deficiencies in the amounts of $48,366 and $101,879, respectively, which reflect respondent's position that all of the Partnership's losses for those years (including the losses reported prior to the entry of the Decision) should be recharacterized as passive losses in petitioners' hands, subject to the limitations of section 469. On March 17, 1997, respondent assessed the deficiencies for 1987 through 1990 arising from the foregoing computational adjustments.

On March 7, 1997, respondent issued to petitioners affected items notices of deficiency for 1987 and 1988 determining additions to tax only, based on the computational adjustments for those years. On March 14, 1997, respondent issued to petitioners penalties-only affected items deficiency notices for 1989 and 1990, based on the computational adjustments for those years.

Based on information subsequently received from petitioners' counsel, respondent abated the assessments for 1989 and 1990 and, with petitioners' consent, attempted to rescind the related penalties-only March 14, 1997, notices pursuant to section 6212(d). However, upon learning of respondent's intention to issue new affected items notices of deficiency for 1989 and 1990 determining both deficiencies and penalties, petitioners revoked their consent to rescind the March 14, 1997, notices in a letter to respondent dated April 24, 1997. On May 1, 1997, petitioners filed the petition herein.

On May 2, 1997, respondent issued additional affected items deficiency notices to petitioners for 1989 and 1990, in which deficiencies and accuracy-related penalties pursuant to section 6662(a) were determined. On August 4, 1997, petitioners filed a petition in docket No. 16483-97 regarding the May 2, 1997, notices, alleging that they are void as second notices pursuant to section 6212(c). Petitioners subsequently filed a motion to dismiss for lack of jurisdiction, and respondent filed a notice of no objection. On November 28, 1997, the Court granted petitioners' motion to dismiss.

On July 2, 1997, respondent filed the answer herein, alleging that the penalties determined in the March 14, 1997, notices are affected items, and that such notices are therefore timely pursuant to section 6229(a) and (d).

Petitioners filed a motion for summary judgment herein on August 18, 1997. On September 3, 1997, petitioners filed a motion for leave to file an amendment to the petition. Respondent filed a notice of objection (notice) to petitioners' motion for summary judgment on September 8, 1997. On September 15, 1997, respondent filed a motion for leave to file an amendment to answer. The foregoing motions and notice were each accompanied by a supporting memorandum of points and authorities.

## Discussion

We must first decide whether to grant petitioners' and respondent's respective motions to amend their pleadings. We

must then decide whether to grant petitioners' motion for summary judgment.

## I. Motions to Amend the Pleadings

Rule 41(a) provides in pertinent part that

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served. * * * Otherwise a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires.

Whether a motion seeking amendment should be allowed lies within the sound discretion of the Court. Rule 41(a); Law v. Commissioner, 84 T.C. 985, 990 (1985).

In determining the justice of a proposed amendment, we must examine the particular circumstances in the case before us. Law v. Commissioner, supra at 990. We consider, among other factors, whether an excuse for the delay exists and whether the opposing party would suffer unfair surprise, disadvantage, or prejudice if the motion to amend were granted. Id.; Nolte v. Commissioner, T.C. Memo. 1995-57, affd. without published opinion 99 F.3d 1146 (9th Cir. 1996); Estate of Ravetti v. Commissioner, T.C. Memo. 1992-697; Spain v. Commissioner, T.C. Memo. 1978-270.

### A. Respondent's Motion for Leave To File Amendment to Answer

Respondent first seeks leave to amend the answer to allege that petitioners' distributive share of partnership losses should be recharacterized as passive losses for purposes of section 469 (the section 469 issue), and that such recharacterization

constitutes an "affected item" within the meaning of section 6231(a)(5) such that section 6229 applies to extend the period of limitations for making assessments in this case.

Petitioners object to respondent's motion, claiming that the "cause of justice" is not served by allowing respondent to amend the answer. Petitioners argue that respondent was cognizant of the section 469 issue at least as early as September 8, 1994, at which time respondent's agent warned petitioners' representative in writing that deficiency notices for 1989 and 1990 challenging petitioners' nonpassive characterization of their share of Partnership losses would be forthcoming unless petitioners filed amended returns for those years. Petitioners further note that the invalid May 2, 1997, notices clearly allege that the section 469 issue is an affected item, and that these notices were issued approximately 2 months before respondent filed the answer in the instant case. Petitioners maintain that respondent's failure to affirmatively allege the foregoing in the pleadings at any time prior to the motion to amend the answer amounts to an inexcusable delay and should be treated as a waiver or concession of such argument.

There is nothing in the record which would support a finding that petitioners will suffer unfair surprise or prejudice as a result of our granting respondent's motion. In fact, petitioners have been aware of the arguments respondent now wishes to affirmatively allege for some time. See Waterman v.

Commissioner, 91 T.C. 344, 351 (1988).  Such awareness is evidenced by petitioners' concerted effort to preempt respondent's ability to raise the section 469 issue generally and to refute its status as an affected item as a matter of law in their motion for summary judgment filed before respondent moved to amend the answer.

Nor have petitioners convinced us that the delay was due to a failure on the part of respondent to exercise reasonable diligence.  Prior to moving for leave to file an amendment to answer, respondent attempted to rescind the March 14, 1997, notices in order to issue corrected notices after discussions with petitioners' counsel.  Respondent was prevented from issuing valid notices when petitioners revoked their consent to withdraw the March 14, 1997, notices.  Furthermore, the motion for leave to file amendment was filed 2 and one-half months from the filing of the original answer, which does not strike the Court as dilatory under the circumstances.  See Waterman v. Commissioner, supra; Wendorff v. Commissioner, T.C. Memo. 1995-258.

Based on the above discussion, we shall grant respondent's motion for leave to file the foregoing amendments to the answer. See, e.g., Waterman v. Commissioner, supra at 351; Spain v. Commissioner, supra.

Respondent further seeks leave to amend the answer to assert increased deficiencies in the amounts of $97,033 and $114,768, and increased penalties pursuant to section 6662(a) in the

amounts of $10,984 and $3,661, for taxable years 1989 and 1990, respectively.

Under section 6214(a), this Court has jurisdiction to consider a claim by the Commissioner for an increased deficiency and penalties asserted before the entry of a final decision. Ferrill v. Commissioner, 684 F.2d 261, 265 (3d Cir. 1982), affg. per curiam T.C. Memo. 1979-501; Henningsen v. Commissioner, 243 F.2d 954, 959 (4th Cir. 1957), affg. 26 T.C. 528 (1956); Law v. Commissioner, supra at 989. Section 6214(a) does not, however, give the Commissioner an unqualified right to amend the answer to claim an increased deficiency, addition to tax, or penalty. Commissioner v. Estate of Long, 304 F.2d 136, 141-143 (9th Cir. 1962). As with other amendments, we must consider whether granting respondent's motion will surprise and/or unfairly disadvantage petitioners. See generally Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973).

Respondent's motion was made prior to the entry of a final decision in this case. Moreover, the assertion of additional deficiencies and penalties comes in response to petitioners' contention that respondent is estopped from reissuing notices of computational adjustment to correct what respondent believes are erroneous abatements for 1989 and 1990. Thus, we conclude that petitioners will suffer no undue surprise or prejudice as a result of this amendment, and respondent's motion on this score is therefore granted. Cf. Hanley v. Commissioner, T.C. Memo.

1990-53.  The burden of proof as to new matters and increased deficiencies pleaded in the amended answer will be upon respondent.  Rule 142(a).

B.  Petitioners' Motion for Leave To File Amendment to Petition

Petitioners seek leave to amend their petition to allege in greater detail the facts necessary to establish the amount of net operating losses that they contend may be carried back to 1987 and 1988, as well as the amount of refunds due them for those years stemming from what they contend are the "proper" computational adjustments for 1989 and 1990.  Petitioners further seek to amend their petition to allege that respondent's application of the higher interest rate imposed on tax motivated transactions pursuant to section 6621(c) to the assessments for 1987 and 1988 is in error.

Respondent has stated in writing that, if the Court were to grant respondent's motion to amend the answer, respondent would withdraw any objection to petitioners' motion to amend the petition.  Accordingly, we will grant petitioners' motion.  Rule 41(a).

II.  Petitioners' Motion for Summary Judgment

Among other things, in their motion for summary judgment, petitioners ask the Court to:  (1) Find that the proper characterization of their distributive share of partnership losses is neither an affected item nor a partnership item for

purposes of determining whether the period of limitations for making assessments has run; (2) find that the proper computational adjustments for 1989 and 1990 result in no deficiencies in tax or penalties for those years; (3) order respondent to refund overpayments for taxable years 1989 and 1990, with interest; and (4) find that petitioners incurred net operating losses for 1989 and 1990 which may be carried back to their taxable years 1987 and 1988.

A motion for summary judgment may be granted if the pleadings and other materials demonstrate that no genuine issue of material fact exists and a decision can be rendered as a matter of law. Rule 121(b); Sundstrand Corp. & Consol. Subs. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

Respondent objects to petitioners' motion for summary judgment on the grounds that it in part seeks the resolution of matters as to which genuine issues of material fact remain. We agree. However, because we are satisfied that no genuine issue exists as to any of the material facts concerning whether the period of limitations for making assessments for 1989 and 1990

has expired, we conclude that partial summary adjudication is appropriate as to that issue in this case.  Rule 121(c).

Section 6501(a) provides generally that respondent has 3 years from the date the return was filed in which to assess the tax.  Section 6501(o) provides a cross-reference to section 6229, which extends such period in the case of adjustments pertaining to partnership items or affected items.

Section 6229(a) provides in general that respondent has 3 years from the date of the filing of the partnership return in which to assess the tax based on any adjustment to a partnership item or affected item.  However, if an FPAA is issued before the end of the 3-year period of limitations of section 6229(a), that period is suspended for the time during which a partnership-level proceeding may be brought under section 6226 and, if such a proceeding is timely brought, until a decision in that proceeding becomes final, and for 1 year thereafter.  Sec. 6229(d).  Sections 7481 and 7483 provide generally that a decision of this Court becomes final, in the absence of a timely filed notice of appeal, 90 days from the date the decision is entered.

The parties do not dispute that the section 6501(a) period of limitations for issuing notices of deficiency to petitioners pursuant to section 6212, as extended by Form 872, expired on June 30, 1995, prior to the issuance of any such deficiency notice to petitioners, unless section 6229(a) and (d) applies to suspend such period.  Here, the Decision became final on June 11,

1996.  The notices were issued on March 14, 1997, less than one year thereafter.  Thus, if section 6229 applies, it is beyond question that the March 14, 1997, notices are timely.

Section 6229 was enacted as part of the unified partnership audit and litigation provisions of TEFRA sec. 402(a), 96 Stat. 648.  The TEFRA rules, codified at sections 6221 through 6233, segregate adjustments attributable to an individual's interest in partnerships which are subject to the TEFRA statutes from all other adjustments which can be made to the individual's return. Maxwell v. Commissioner, 87 T.C. 783, 787-788 (1986).  So-called TEFRA adjustments generally can be made only after all partnership proceedings are completed.  White v. Commissioner, 95 T.C. 209, 211 (1990); Roberts v. Commissioner, 94 T.C. 853, 859 (1990); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 743-745 (1987); Maxwell v. Commissioner, supra at 790-793.

If we determine that the section 469 issue, as petitioners contend, does not involve a partnership item or affected item adjustment, then section 6229 does not operate to suspend the period of limitations.  Sec. 6501.  Under this scenario, respondent concedes that petitioners' distributive share of petitioners' losses for 1989 and 1990 could not be recharacterized as passive, and, therefore, that petitioners would be entitled to refunds for those years based on the partnership-level adjustments.

TEFRA adjustments are of two varieties:  Partnership item adjustments and affected item adjustments.  Section 6231(a)(3) defines a partnership item as follows:

> SEC. 6231(a)(3) Partnership item.--
>
> The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

Such items include items of income, gain, loss, deduction or credit of the partnership, and each partner's share thereof. Sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.

The term "affected item" is defined as "any item to the extent such item is affected by a partnership item."  Sec. 6231(a)(5); see White v. Commissioner, supra at 211; Maxwell v. Commissioner, supra at 790-791.

The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.  Sec. 6231(a)(4).

Partnership item adjustments can be made to an individual's return solely through computational adjustments.  Sec. 6230(a). Affected item adjustments, on the other hand, can be made either through computational adjustments or deficiency proceedings, depending on the nature of the particular affected item.  Sec. 6230(a); Brookes v. Commissioner, 108 T.C. 1, 5-6 (1997); Jenkins v. Commissioner, 102 T.C. 550, 554 (1994); N.C.F. Energy Partners v. Commissioner, supra at 744-745.  If there are no partner-level

factual determinations which must be made relating to the affected item, the tax resulting from the adjustment of the affected item must be assessed through a computational adjustment.  Secs. 6230(a)(1) and 6231(a)(6).  If there are factual issues which must be determined at the partner level, then respondent's permitted means of making the adjustment is through the issuance of a deficiency notice pursuant to section 6230(a)(2)(A)(i).  <u>N.C.F. Energy Partners v. Commissioner</u>, <u>supra</u> at 744-745.

    A.  <u>The section 469 issue does not involve a partnership item</u>.

Section 469(a)(1) provides generally that no passive activity loss claimed by a taxpayer during any taxable year is allowable as a deduction.  Section 469(d)(1) provides that the term "passive activity loss" means the amount, if any, by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year.  Section 469(c) provides generally that the term "passive activity" means any activity which:  (1) Involves the conduct of any trade or business; and (2) in which the taxpayer does not materially participate.  In general, a taxpayer is treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is:  (1) Regular; (2) continuous; and (3) substantial.  Sec. 469(h)(1).  A passive activity, by definition (effective for

the years in question), includes any rental activity, regardless of whether the taxpayer materially participates in such rental activity. Sec. 469(c)(2) and (4). (We note that, effective for taxable years beginning after December 31, 1993, section 469(c)(2) has been modified by the provision of special rules in section 469(c)(7) for taxpayers in the real property business. Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13143(a), 107 Stat. 312, 440.)

Respondent's principal argument is that the section 469 issue is more appropriately determined at the partnership level and is therefore subject to computational adjustment. Sec. 6231(a)(3), (6). In that connection, respondent claims to have erred in abating the assessments for 1989 and 1990; that the penalties determined in the March 14, 1997, notices are both timely and proper; and that new notices of computational adjustment reassessing deficiencies for those years can be issued to petitioners.

In arguing that the section 469 issue involves a partnership item subject to TEFRA adjustment rules, respondent posits that the Partnership's losses stem from rental activity for the years in issue, a per se passive activity under section 469(c)(2). Thus, according to respondent, a partner-level factual determination as to the extent of petitioners' participation in the Partnership's activities is unnecessary. (Respondent argues that no partner-level determination is required even as to the

$25,000 offset to passive income provided by section 469(i) for taxpayers who "actively participate" in a rental real estate activity insofar as section 469(i)(6)(C) provides that a limited partner is deemed not to actively participate in such activity except as provided by regulation, and no such regulation permits a limited partner to claim active participation in rental real estate activity for 1989 and 1990.)  Respondent invites our attention to line B of the Partnership's returns for 1989 and 1990, which describes the principal product or service of the Partnership as "rentals".

Petitioners concede that, should the Court determine that the Partnership's returns for 1989 and 1990 are to be construed as reporting that the Partnership's losses derive from rental activity within the meaning of section 469(c)(2), then the characterization of those losses in the hands of petitioners would constitute a partnership item.  But petitioners do not concede that the Partnership's reporting is to be so construed. Rather, petitioners argue that the Partnership reported its losses as arising from a trade or business that was not rental activity on its returns and attached Schedules K and K-1 for those years.  Thus, petitioners claim that factual issues regarding the extent of their participation in the Partnership's activities must be resolved before their distributive share of the Partnership's losses can be characterized as passive or

nonpassive.  As a result, petitioners maintain that the section 469 issue does not involve a partnership item.  Sec. 6231(a)(3).

We conclude that the Partnership reported its losses as arising from trade or business activity (other than rental activity) on its returns for the years in dispute.  (In reaching our conclusion, we note that we are not making an inappropriate review of the partnership's returns.  See Roberts v. Commissioner, 94 T.C. at 862.)  The Partnership reported its income and expense on its returns for 1989 and 1990 immediately below the following statement:  "Caution:  Include only trade or business income and expenses on lines 1(a) through 21 below."  In addition, lines 2 and 3 on the Schedules K require the Partnership to report its income or loss arising from rental activities.  Respondent's instructions for these lines refer the reader to Publication 925, Passive Activity and At-Risk Rules, for the purpose of defining rental activities.  The Partnership left lines 2 and 3 blank for its taxable years 1989 and 1990.  Moreover, line 1 of the Schedules K-1 reports the partners' distributive share of the Partnership's losses as arising from trade or business activities.

It is true, as respondent points out, that line B of the Partnership's returns for 1989 and 1990 describes the principal product or service of the Partnership as "rentals".  Contrary to respondent's contention, however, such a description is not dispositive of the nature of the Partnership's activity for

purposes of section 469(c)(2).  Although the general rule under section 1.469-1T(e)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988), is that the receipt of gross income from holding tangible property for use by customers constitutes a rental activity, section 1.469-1T(e)(3)(ii), Temporary Income Tax Regs., supra, provides a number of exceptions to the general rule, such that an activity involving the holding of tangible property for use by customers does not necessarily amount to per se passive "rental activity" within the ambit of section 469(c)(2).

Finally, notwithstanding respondent's assertions, lines 19(b) and 20(b), Analysis of total distributive income/payment items by type of partner, of the Schedules K for 1989 and 1990, respectively, which reported losses as largely passive to the limited partners, are not substantively equivalent to reporting partnership activities as rental activities within the meaning of section 469(c)(2).  The reported passive losses could have arisen either from rental activity or from a trade or business that did not consist of rental activity.  Respondent's instructions for completing Schedules K for the years in question direct partnerships to classify a partner's losses as passive if the partnership does not know the character of the losses in the hands of the partner, irrespective of the partnership activity.

In light of the above, we conclude that the Partnership reported its losses as arising from trade or business activity

for 1989 and 1990.  Since no adjustment was made during the partnership-level proceeding as to the character of the activity, respondent is bound by the reporting position of the Partnership. See Doe v. Commissioner, 80 AFTR2d 97-5535, 97-1 USTC par. 50460 (10th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1993-543; Roberts v. Commissioner, 94 T.C. at 862.

Having concluded that the Partnership reported its losses as arising from trade or business activity, we think it ineluctable that the characterization of such losses as active or passive in the hands of petitioners is not a partnership item within the meaning of section 6231(a)(3) and the accompanying regulations. Determining whether or not petitioners materially participated in such activity for purposes of section 469 has no effect on any item that would affect all of the partners' respective returns, nor does it have any effect on any item on the Partnership's return or on the Partnership's books and records.  See Roberts v. Commissioner, 94 T.C. at 861.

B.  The section 469 issue involves an affected item requiring a partner-level factual determination.

We now turn to consider respondent's alternative position set forth in the amended answer that the section 469 issue involves an affected item such that section 6229(a) and (d) applies to suspend the period of limitations.  Sec. 6230(a)(2)(A)(i).

Petitioners contend that section 301.6231(a)(5)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987), neither mentions section 469 nor suggests that the characterization of losses as passive or nonpassive be treated as an affected item. From such silence petitioners conclude that the section 469 issue involves a nonpartnership item within the meaning of section 6231(a)(4), to which section 6229 does not apply. Petitioners state in this regard that "Since the partnership items adjusted by the decision [i.e., the amount of losses] are irrelevant to the nature, duration, or quality of petitioners' participation in the partnership's activities, the [section] 469 issue cannot be an affected item under section 6231(a)(5)."

Although the affected items regulations do not expressly mention section 469, we do not think that the regulations are meant to provide an exhaustive list of such items. See, e.g., Jenkins v. Commissioner, 102 T.C. at 555 (holding that section 104(a) classification by partner of a guaranteed payment is an affected item).

Furthermore, we question petitioners' assumption in their memorandum that "an item on a partner's return can be an affected item if and only if the partner's treatment of that item is dependent, in the first instance, on a partnership item adjustment." (Emphasis added.) Petitioners have cited no authority for this narrow interpretation of the scope of section

6231(a)(5), and we have found none.  On the contrary, section 6231(a)(5) itself provides that the term "affected item" means "any item to the extent such item is affected by <u>a</u> partnership item."  (Emphasis added.)  See also <u>Maxwell v. Commissioner</u>, 87 T.C. at 790-791 ("An item whose existence or amount is dependent on <u>any</u> partnership item is an affected item.") (Emphasis added.)

As we said in <u>Hambrose Leasing v. Commissioner</u>, 99 T.C. 298, 308 (1992): "partnership liabilities should be determined and taken into account at the partnership level whenever such determination <u>produces a uniform effect on the partners</u>." (Emphasis added.)  Such is not the case where, as here, the treatment of one partner's activities (vis-a-vis the partnership) as passive or nonpassive has no impact on the treatment of another partner's activities.  In such case, a uniform effect on the partners is not produced.

We therefore conclude that the characterization of losses as either passive or nonpassive in the hands of a partner is an affected item under section 469, and we so hold.

Finally, petitioners argue that

> If respondent asserts that the [section] 469 issue is an affected item for 1989 and 1990, respondent must also admit that the computational adjustments for 1987 and 1988 should not have been made, since they involved an item requiring a partner level determination.

Notwithstanding petitioners' assertions, our conclusion that the characterization of losses in the hands of petitioners for 1989 and 1990 constitutes an affected item is not inimical to

respondent's authority to issue notices of computational adjustment rather than deficiency notices to petitioners for their taxable years 1987 and 1988 upon the completion of the partnership level proceeding. Respondent never sought to recharacterize petitioners' distributive share of partnership losses for 1987 and 1988 as passive--petitioners had already reported them as such on their returns for those years. Rather, the computational adjustments for 1987 and 1988 simply reflect the partnership-level adjustments set forth in the Decision for those years. Since the amount of losses in the hands of petitioners is conclusively a partnership item, sec. 301.6231(a)(3)-1(a)(1), Proced. & Admin. Regs., and since the Decision had become final, such item was properly subject to computational adjustment. Sec. 6225(a); Maxwell v. Commissioner, 87 T.C. at 788.

We have considered each of the remaining arguments of the parties and, to the extent that they are not discussed herein, find them to be either not germane or unconvincing.

In light of the foregoing, we hold that the section 469 issue involves an affected item, such that the statutory period of limitations does not bar respondent from asserting additional deficiencies and accuracy-related penalties for 1989 and 1990 as set forth in the amended answer. Sec. 6229(a) and (d). Accordingly, petitioners' motion for summary judgment is denied. Factual issues (including the nature and extent of petitioners'

participation in the Partnership's activities) which are determinative of respondent's right to assess deficiencies and penalties, or petitioners' right to claim overpayments for the years at issue, among other things, must be resolved in future proceedings.

To reflect the foregoing,

<u>An appropriate order granting petitioners' motion for leave to file amendment to petition and respondent's motion for leave to file amendment to answer, and denying petitioners' motion for summary judgment, will be issued</u>.