T.C. Memo. 2016-105

UNITED STATES TAX COURT

AIDAN IFEANYI OGAMBA AND CELINE NNENNA OGAMBA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13468-14L.                    Filed May 26, 2016.

Aidan Ifeanyi Ogamba and Celine Nnenna Ogamba, for themselves.

Kristin H. Joe, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  The petitioners, Mr. Aidan Ifeanyi Ogamba and Ms.
Celine Nnenna Ogamba, challenge the determination of the IRS Appeals Office
dated May 6, 2014.  The determination followed a collection-review hearing, the
right to which was triggered by a notice from the IRS that it proposed to levy to
collect the Ogambas' unpaid liabilities for tax years 2009, 2010, and 2011.  Our

[*2] jurisdiction over the dispute is established by section 6330(d)(1) of the Internal Revenue Code of 1986, as amended.[1] We sustain the determination of the Appeals Office.

## FINDINGS OF FACT

The Ogambas resided in California at the time they filed their petition.

2009 tax return

On their 2009 joint Form 1040, U.S. Individual Income Tax Return, the Ogambas claimed dependency-exemption deductions for a son and a daughter.

The Ogambas did not report any income from canceled debts on the 2009 return.

The Ogambas reported that their capital losses for the year consisted of a $3,200 loss on the sale of 400 shares of Ziplink, Inc. They reported that they had acquired the shares of Ziplink, Inc., on April 4, 2000, and sold them on November 10, 2009, for a sales price of negative $3,200. The Ogambas did not report their basis in the shares.[2] They also reported that they had a capital loss carryover from

---

[1]Unless otherwise indicated, all references to sections are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Here we explain more specifically how the Ogambas reported the sale of the 400 shares of Ziplink, Inc. The Ogambas reported "$3,200.00-" on line 8(d),

(continued...)

[*3] prior years of $2,716. When the $2,716 carryover was combined with the $3,200 loss reported for 2009, the total capital loss reported was $5,916. In recognition of the rule that only $3,000 in capital losses is deducted from ordinary income per year, sec. 1211(b), the Ogambas claimed a deduction of $3,000. This left $2,916 to be carried over to subsequent years as a capital loss carryover.

2010 tax return

On their 2010 joint Form 1040, the Ogambas claimed dependency-exemption deductions for the same son and daughter for whom they had claimed those deductions on their tax return for 2009.

The Ogambas reported $36,798 on line 21 for "Other income". The return described this amount as "Form 1099C". Form 1099-C, Cancellation of Debt, is the form used by creditors to report to the IRS that they have canceled (or forgiven) a debt.

The Ogambas reported that their capital losses for the year consisted of a $4,810 loss from the sale of 550 shares of Ziplink, Inc. They reported that they

---

[2](...continued)
which was titled "Sales price". They left blank line 8(e), which was titled "Cost or other basis". And they reported "$3,200.00-" on line 8(f), which was titled:

Gain or (loss)
Subtract (e) from (d)

**[\*4]** had acquired the shares on April 4, 2000, that their basis in the shares was $10, and that they had sold the shares on October 5, 2010, for a sales price of negative $4,800.[3] They also reported that they had a capital loss carryover from prior years equal to $2,916. When this $2,916 carryover was combined with the $4,810 loss reported for 2010, the total capital loss reported was $7,726. In recognition of the rule that only $3,000 in capital losses is deducted from ordinary income per year, sec. 1211(b), the Ogambas claimed a deduction of $3,000. This left $4,726 to be carried over to subsequent years as a capital loss carryover.

Notice of deficiency

On March 30, 2012, the IRS mailed the Ogambas a notice of deficiency for tax years 2009 and 2010.

The notice of deficiency allowed the dependency-exemption deductions for the son and the daughter that the Ogambas had claimed on their 2009 and 2010 returns.

---

[3]Here we explain more specifically how the Ogambas reported the sale of the 550 shares of Ziplink, Inc. The Ogambas reported "$4,800.00-" on line 8(d), which was titled "Sales price". They reported "$10.00" on line 8(e), which was titled "Cost or other basis". And they reported "$4,810.00-" on line 8(f), which was titled:

Gain or (loss)
Subtract (e) from (d)

**[\*5]**  For 2009, the notice of deficiency determined that the Ogambas had a capital gain of $2,516, rather than the $3,200 capital loss they reported.  It is unclear whether the $2,516 gain that the IRS determined related to the sale of the 400 shares of Ziplink stock that the Ogambas reported, or to other sales of Ziplink stock, or to sales of other capital assets.  When the $2,516 gain the IRS determined is combined with the $2,716 capital loss carryover reported from prior years (a carryover that the IRS did not challenge), the total capital loss, as determined by the IRS, was $200.  Consequently, the notice of deficiency determined that the amount of capital losses deducted against ordinary income for 2009 was $200, not the $3,000 that the Ogambas claimed.  The IRS also determined that the capital loss to be carried over from 2009 to later years was zero.

For 2010, the notice of deficiency determined that the Ogambas had a capital loss of $4,726, rather than the $4,810 capital loss that the Ogambas reported.  It is unclear whether the $4,726 loss that the IRS determined related to the sale of the 550 shares of Ziplink stock that the Ogambas reported, or to other sales of Ziplink stock, or to other capital assets.  The IRS calculated that the Ogambas had a capital loss carryover from prior years of zero, rather than the $2,716 that they reported.  The notice determined that $3,000 of the $4,726 loss

**[*6]** should be deducted against ordinary income and that the remaining $1,726 of the $4,726 loss was available as a capital loss carryover to future years.

The notice of deficiency made other adjustments not described here.  No adjustment related to income from canceled debts for either 2009 or 2010.  In particular, the notice of deficiency did not make an adjustment to the Ogambas' income for 2010 as to their reporting of $36,798 as "Other income" described on their return as "Form 1099C".

In the notice of deficiency the IRS determined deficiencies of $15,795 and $13,900 and section-6662 penalties of $3,159 and $2,278 for 2009 and 2010, respectively.  The Ogambas did not file a Tax Court petition in response to the notice of deficiency.

The record does not reveal much about the Ogambas' 2011 tax year and the causes of their liability for that year.  This absence does not hinder our resolution of the case because, as we explain later, the Ogambas seek judicial review of only liability issues related to 2009 and 2010.

The IRS's notice of proposed levy, the collection-review hearing, and the procedural history of the case

On March 2, 2013, the IRS mailed the Ogambas the notice that it proposed to levy to collect their liabilities for tax years 2009, 2010, and 2011.  These

**[*7]** liabilities included the deficiencies in income tax and the section-6662 penalties determined in the notice of deficiency for 2009 and 2010. The liabilities also included section-6651(a)(3) penalties for 2009 and 2010 and underpayment interest for 2009 and 2010.

In response to the notice of proposed levy the Ogambas requested a collection-review hearing with the Appeals Office. During the proceedings before the Appeals Office the Ogambas stated that they wished to raise issues regarding the amounts of their income-tax liabilities for 2009 and 2010. They stated that they never received the notice of deficiency. The Appeals Office wrote a letter to the Ogambas stating: "You will be allowed to raise the liability during the Appeals process". The Ogambas submitted letters to the Appeals Office that they intended to be their explanation of their arguments regarding the amounts of their income-tax liabilities for 2009 and 2010.

In these letters to the Appeals Office the Ogambas contended that they were entitled to dependency-exemption deductions for two additional persons: (1) Mr. Ogamba's father and (2) a son other than the son for whom they had already claimed a dependency-exemption deduction on their 2009 and 2010 returns ("second son"). Attached to these letters was a letter from Mr. Ogamba's father stating that he had stayed with Mr. Ogamba at the Ogambas' house from February

[*8] 12, 2008, to January 20, 2011. The letter from Mr. Ogamba's father also stated: "He [Mr. Ogamba] will claim me as his dependent for Tax Year 2008, 2009 & 2010."

For both 2009 and 2010, the Ogambas' letters to the Appeals Office asserted: "The Capital Gains and Losses Ziplink Inc. Shares Sales resulting in our losses and a Deduction of $3,000.00 should be granted. Please see documents." Attached to the letters to the Appeals Office was a press release, dated August 22, 2011, announcing that the "Zachs Family" (described as the majority shareholder of Ziplink, Inc.) had offered to purchase shares of Ziplink, Inc., for 6.5 cents per share and that the offer would stand until September 19, 2011.

Regarding both 2009 and 2010, the Ogambas' letters to the Appeals Office asserted: "Part of our income was from our Loan Modification debt relief (Mortgage Forgiveness debt relief) for our Primary Residence. I believe that amount should not have been added as our income." Regarding 2010, the Ogambas' letters to the Appeals Office stated: "My Bank of America Visa Card debt forgiveness write off amount was added as our primary income. This Cancellation of debt was as a result of our Rental Home Reconstruction. And to the best of my knowledge, this Business loss should be depreciated." Attached to

[*9] the letters to the Appeals Office were five Forms 1099-C that included the following information:

| Year | Debtor | Creditor | Debt description | Amount of debt canceled | Date canceled |
|---|---|---|---|---|---|
| 2009 | Aidan Ogamba | GMAC Mortgage | Mortgage | $1,293.67 | Jan. 15, 2009 |
| 2009 | Celine Ogamba | GMAC Mortgage | Mortgage | 1,293.67 | Jan. 15, 2009 |
| 2010 | Aidan Ogamba | GMAC Mortgage | Mortgage | 677.13 | Mar. 8, 2010 |
| 2010 | Celine Ogamba | GMAC Mortgage | Mortgage | 677.13 | Mar. 8, 2010 |
| 2010 | Aidan Ogamba | Bank of America | Credit Card | 35,443.62 | Mar. 15, 2010 |

The Appeals Office informed the Ogambas that it would not make any of the adjustments that they had requested to their income-tax liabilities. The Ogambas agreed to pay their liabilities for 2009, 2010, and 2011 through installment payments.

In a notice of determination dated May 6, 2014, the Appeals Office refused to make any of the adjustments that the Ogambas' had requested to their income-tax liabilities. The notice of determination stated that the Ogambas had requested two additional dependency-exemptions but that the only support they submitted for those deductions was a letter from Mr. Ogamba's father. The notice of determination stated that the Ogambas submitted no other information to

[*10] substantiate their entitlement to the dependency-exemption deductions, and that "[s]ufficient information/documentation has not been provided to allow either dependent." The notice of determination stated that the IRS had disallowed a $3,000 capital-loss deduction for the 2009 tax year, that the Ogambas had provided a press release to support the loss, and that the Ogambas "have not provided sufficient information/documentation to show they are entitled to the loss." With respect to the canceled-debt income, the notice stated: "There is no indication that this income was included on their tax returns, and there was no adjustment for this income by Examination." Because the Ogambas had agreed to pay their liabilities for the years 2009 through 2011 in installment payments, the Appeals Office determined not to sustain the proposed levy.

The Ogambas filed a timely petition challenging the notice of determination. They limit their challenge to the amounts of their liabilities for 2009 and 2010, including the income-tax liabilities, the section-6662 penalties, the section-6651(a)(3) penalties, and underpayment interest. Before trial the IRS submitted a pretrial memorandum in which it claimed the Ogambas could not challenge certain of the liabilities for 2009 and 2010 because, it contended, they had received the notice of deficiency. The Court issued an order stating that "the evidence the parties should submit at trial should include evidence related to the amount of the

**[*11]** Ogambas' 2009 and 2010 tax liabilities" and that "[i]f the Court determines that the Ogambas did not receive the notice of deficiency, the Court will review any appropriate issues regarding the amount of the Ogambas' 2009 and 2010 tax liabilities and will consider the evidence presented at trial with respect to the amount of the 2009 and 2010 tax liabilities." At trial the Court admitted the letters (and attachments) that the Ogambas had sent to the Appeals Office. At trial Mr. Ogamba testified that the Ogambas had not received the notice of deficiency. As to the second son for whom the Ogambas seek dependency-exemption deductions, Mr. Ogamba testified:

> We have five kids, and during the filing, one of my sons was doing a part-time job, so I did not include him. But later on after submitting the taxes, we found out that he only made $400 during this part-time job, which isn't enough. So during the second phrase, we decided to use, add him as our dependent, which might--our prior tax years shows that's our dependent.

As to the dependency-exemption deductions for his father, Mr. Ogamba testified: "The next dependent is my father, who stays with me. I used him this time, but I was surprised, Your Honor, the IRS officer disallowed my dependents, even though they can see from our previous records that these individuals were used during our filing."

**[*12]**                                    OPINION

Before the IRS can levy to collect a liability, it must notify the taxpayer of the right to a collection-review hearing with its Appeals Office. Sec. 6330(a)(1), (b)(1). At the hearing the taxpayer is entitled to raise various issues, including "challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). The "underlying tax liability" includes all liabilities that are subject to the proposed levy. Katz v. Commissioner, 115 T.C. 329, 338 (2000).

After the collection-review hearing, the Appeals Office makes a determination about the appropriateness of the proposed levy. Sec. 6330(c)(3)(C). The determination must also consider the issues raised by the taxpayer. Sec. 6330(c)(3)(B). If the taxpayer is dissatisfied with the determination, he or she can appeal the determination to the Tax Court, as the Ogambas have done here. Sec. 6330(d)(1). The Tax Court can review only the issues that were properly raised by the taxpayer at the collection-review hearing with the Appeals Office. See sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

The IRS contends that the Ogambas are barred from contesting the amounts of their income-tax liabilities for 2009 and 2010 because it claims that the

[*13] Ogambas received the notice of deficiency. See sec. 6330(c)(2)(B). The notice of deficiency entitled the Ogambas to file a petition in the Tax Court. Sec. 6213(a). Had they filed a petition challenging the notice of deficiency, a deficiency case would have begun. In that deficiency case, the Tax Court would have been authorized to redetermine the deficiencies, which would include resolving issues regarding the amounts of the Ogambas' liabilities for income tax. Sec. 6214(a) (giving Tax Court jurisdiction to redetermine deficiencies); sec. 6211(a) (generally defining a deficiency as the correct tax minus the tax shown on the return). The Court also would have had jurisdiction to redetermine the Ogambas' liability for the section-6662 penalties. See sec. 6214(a); Estate of Quick v. Commissioner, 110 T.C. 172, 179-180 (1998). Mr. Ogamba credibly testified that the Ogambas never received a notice of deficiency. Because the Ogambas did not receive a notice of deficiency, they were not prevented from raising their "underlying tax liability" (i.e., their liabilities for income tax and the section-6662 penalties) at the collection-review hearing at the Appeals Office. It is therefore appropriate for us to consider the Ogambas' challenge to their income-tax liabilities for 2009 and 2010. However, as explained infra part 1 we hold that the evidence does not show that the Appeals Office erred in its determinations regarding the amounts of the Ogambas' 2009 and 2010 income-tax liabilities. The

[*14] Ogambas also attempt to raise challenges with us to their liability for section-6662 penalties, section-6651(a)(3) penalties, and overpayment interest. However, as explained <u>infra</u> part 2 below, we hold that the Ogambas failed to make these challenges with the Appeals Office. Because of that failure they are barred from raising these issues with us. <u>See</u> 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

1.   <u>The evidence is insufficient to show that the IRS's determinations of the amounts of the Ogambas' income-tax liabilities for 2009 and 2010 are incorrect</u>.

The evidence the Ogambas presented at trial does not show that the Appeals Office was incorrect in its determinations of the amounts of their income-tax liabilities for 2009 and 2010. At a trial involving challenges to the underlying tax liability (including the amount of an income-tax liability), the Tax Court gives no deference to the determination of the Appeals Office and it considers evidence beyond that which was presented to the Appeals Office. (These principles are explained, for a case which like this one is appealable to the Court of Appeals for the Ninth Circuit, in <u>Jordan v. Commissioner</u>, 134 T.C. 1, 5, 8-9 (2010).) Furthermore, the taxpayers have the burden of proof. <u>See</u> Tax Ct. R. Pract. & Proc. 142(a); sec. 7491(a)(1) (shifting burden to IRS if certain conditions are met, none of which are met by the Ogambas). There are three areas in which the

[*15] Ogambas dispute the amounts of their income-tax liabilities: (1) dependency-exemption deductions, (2) capital losses, and (3) income from canceled debts. We discuss each area below in parts 1.a and 1.b and 1.c, respectively.

     a.     <u>Dependency-exemption deductions</u>

Section 151(a) and (c) provides that a taxpayer can deduct an exemption amount for each dependents. A dependent is defined as either a qualifying child or a qualifying relative. Sec. 152(a).

The only evidence the Ogambas gave about the second son for whom they seek additional dependency-exemption deductions is that he earned only $400 during one of the two years at issue. One of the tests for being a qualifying child is that the child must not be self-sufficient. Specifically, the child must not provide over one-half of his or her own support during the year. Sec. 152(c)(1)(D). A child who earns only $400 per year would seemingly not be self-sufficient. But there are other requirements to be a qualifying child. The child must be younger than 19 years of age (or younger than 24 years of age if a student). Sec. 152(c)(1)(C). The child must have the same principal place of abode as the taxpayer for more than half the year. Sec. 152(c)(1)(B). The evidence does not show that these other requirements were satisfied with respect

**[\*16]** to the Ogambas' second son. There is also insufficient evidence to show that the second son was a qualifying relative. To be a qualifying relative, the relative must be financially dependent on the taxpayer. Specifically, the taxpayer must provide over one-half of the relative's support. Sec. 152(d)(1)(C). The record does not reveal how much support the Ogambas gave their son. For example, the record does not reveal whether the second son lived in the Ogambas' house (and therefore received support in the form of free housing) or whether he received support from other relatives, from the government, or from a school, for example. We therefore conclude that the Ogambas have not proven that their second son was a qualifying relative.

Similarly, there is insufficient evidence to show that Mr. Ogamba's father was a qualifying relative. Mr. Ogamba testified that his father stayed with him. This claim is supported by his father's letter, which was submitted by the Ogambas to the Appeals Office and made part of the trial record. But sharing a place of abode with the taxpayer is not itself a requirement to be a qualifying relative. See sec. 152(d)(1). For Mr. Ogamba's father to be a qualifying relative, the Ogambas had to provide more than half of the father's support. Sec. 152(d)(1)(C). Furthermore, the father's gross income had to be below the

[*17] exemption amount. Sec. 152(d)(1)(B). The evidence does not show that these requirements were met.

b.    Capital losses

The following table summarizes the capital losses as reported by the Ogambas for 2009 and 2010 and then as adjusted in the notice of deficiency:

| Item | As reported | As determined by the IRS |
|------|-------------|--------------------------|
| Capital gain or loss carryover to 2009 | -$2,716 | -$2,716 |
| Capital gain or loss for 2009 | -3,200 | 2,516 |
| Total capital gain or loss for 2009 | -5,916 | -200 |
| Deduction against ordinary income for 2009 | 3,000 | 200 |
| Capital gain or loss carryover to 2010 | -2,916 | 0 |
| Capital gain or loss for 2010 | -4,810 | -4,726 |
| Total capital gain or loss for 2010 | -7,726 | -4,726 |
| Deduction against ordinary income for 2010 | 3,000 | 3,000 |
| Capital gain or loss carryover to 2011 | -4,726 | -1,726 |

The $3,200 capital loss the Ogambas reported for 2009 corresponded to a reported sale of 400 shares of Ziplink on November 10, 2009. The $4,810 capital loss reported by the Ogambas for 2010 corresponded to a reported sale of 550 shares of Ziplink stock on October 5, 2010. It is difficult to determine how the Ogambas calculated the losses they reported on their sales of Ziplink stock. For 2009, they reported a loss of $3,200. It is unclear how this $3,200 loss was calculated from

[*18] the sale price they reported, -$3,200. (It is unclear how stock can be sold for a negative sale price.) Furthermore, they did not report their basis in the stock. For 2010, they reported a loss of $4,810. It is unclear how this $4,810 was calculated from the basis they reported, $10, and the sale price they reported they received, -$4,800. The Ogambas' brief does not make their position any clearer. Their explanation of the issue on brief is short and vague: "[W]e indeed suffered capital losses during these years [2009 and 2010] in the stock market. Our Ziplink Inc. shares lost its value during our sales and fell to penny stocks."

A taxpayer may deduct a loss on the sale of stock for the year in which the stock is sold. See sec. 165(a); sec. 1.165-1(b), (c)(1), (3), Income Tax Regs. The loss is equal to the sale price of the stock minus the basis. See sec. 1001(a) and (b). The record does not reveal the prices at which the Ogambas sold their Ziplink stock, the dates of the sale, or their basis. The only evidence in the record regarding the Ziplink stock is (1) the Ogambas' tax returns, the calculations on which are inexplicable, and (2) the 2011 press release regarding an offer to purchase Ziplink stock, which suggests only that the market value of the stock was about 6.5 cents per share in 2011. It appears that the Ogambas contend that their reporting of the sale of Ziplink stock on their returns was correct. But the record does not support this contention.

**[*19]** c.    <u>Income from canceled debt</u>

Section 61(a)(12) provides that gross income includes income from canceled debts.  However, section 108(a)(1)(E) provides that gross income does not include income from a canceled debt that is "qualified principal residence indebtedness".  And section 108(a)(1)(D) provides that gross income does not include income from a canceled debt that is "qualified real property business indebtedness".  The Ogambas argue that under these exceptions they should exclude, from their gross income, the income from the following canceled debts: (1) a $1,293.67 debt canceled January 15, 2009, (2) another $1,293.67 debt canceled January 15, 2009, (3) a $677.13 debt canceled March 8, 2010, (4) another $677.13 debt canceled March 8, 2010, and (5) a $35,443.62 debt canceled March 15, 2010.  These debts correspond to the amounts reported on Forms 1099-C as shown in the table <u>supra</u> page 9.

The IRS argues that the Ogambas did not report income from any of the above-listed canceled debts on their 2009 or 2010 returns and that the notice of deficiency did not determine that income from these canceled debts should be included in the Ogambas' income.  Thus, the IRS argues, the income-tax liabilities it sought to collect by levy are not predicated on income from these canceled debts.

[*20] The Ogambas reported no income from canceled debts on their 2009 return. Furthermore, the notice of deficiency did not determine that the Ogambas had income from canceled debts for 2009. On their 2010 return, by contrast, the Ogambas reported income $36,798 from canceled debts. This amount is equal to the sum of the amounts of the third, fourth, and fifth canceled debts. The notice of deficiency did not determine an adjustment to this aspect of the return. Therefore, it appears that the IRS included the canceled-debt income reported by the Ogambas for 2010 in its determination of the Ogambas' income for that year. It follows that the income-tax liability for 2010 that the IRS proposed to collect by levy was predicated on the Ogambas' having had $36,798 of canceled-debt income that was includable in their gross income. Whether this income is truly includable in the Ogambas' gross income is therefore relevant to the amount of the "underlying tax liability". See sec. 6330(c)(2)(B).

The IRS argues that the Ogambas did not provide any credible testimony or evidence to support their position that the canceled debts were "qualified principal residence indebtedness" or "qualified real property indebtedness". We agree with the IRS.

For a debt to be "qualified principal residence indebtedness" the debt must, among other things, have financed the taxpayer's principal residence. Secs.

**[\*21]** 108(a)(1)(E), (h)(2), (5), 121, 163(h)(3)(B). The record does not show whether the three debts canceled in 2010 financed the Ogambas' principal residence.

For a debt to be "qualified real property business indebtedness" it must, among other things, have financed real property used in the taxpayer's trade or business. Sec. 108(c)(3) and (4). Furthermore, the taxpayer is required to properly make an election to exclude income from such a canceled debt. Sec. 108(c)(3)(C); sec. 1.108-5, Income Tax Regs. The record does not show that these requirements have been met for any of the three debts canceled in 2010.

In conclusion, the Ogambas have not proven that any of the three debts canceled in 2010 are "qualified primary residence indebtedness" or "qualified real property business indebtedness". Therefore, these three debts are not excludable from the Ogambas' gross income under section 108(a)(1)(D) or (E).

2. <u>At the collection-review hearing with the Appeals Office, the Ogambas failed to raise the issues of the section-6662 penalties, the section-6651(a)(3) addition to tax, and underpayment interest.</u>

The amounts that the IRS seeks to collect by levy include not only income-tax liabilities, but also the following amounts: (1) penalties under section 6662 for 2009 and 2010, (2) additions to tax under section 6651(a)(3) for failing to pay tax that should have been shown on returns for years that include 2009 and 2010, and

**[\*22]** (3) interest on underpayments of tax for years that include 2009 and 2010.

Section 6662 imposes a penalty on a taxpayer who reports less than the correct amount of tax on a return. Section 6651(a)(3) requires a taxpayer to pay an addition to tax if the taxpayer fails to pay an amount of tax that should have been shown on a return but was not so shown. Underpayment interest is the interest the taxpayer must pay from the due date for payment of taxes until the date the tax is paid. Sec. 6601(a). The Ogambas contend that the additions to tax, penalties, and interest should be abated for 2009 and 2010. However, they did not make this contention to the Appeals Office. Therefore, they are barred from seeking Tax Court review of their liability for the section-6651(a)(3) addition to tax, the section-6662 penalties, and underpayment interest. See sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

3.    Conclusion

To reflect the foregoing,

Decision will be entered for

respondent.