# United States Tax Court

T.C. Memo. 2023-80

NEEL KAMAL AND PREETI SHARMA,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8122-21.                    Filed June 22, 2023.

————

Neel Kamal, pro se.

*David M. Carl* and *Trent D. Usitalo*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, *Judge*:  In 2016 Neel Kamal received a substantial payment after exercising his stock options and later selling the stock. To offset his income from the stock sale, Mr. Kamal claimed business expense deductions for a consulting business. Respondent issued petitioners a notice of deficiency on February 11, 2021, determining the following deficiencies, additions to tax, and penalties:[1]

| Year | Deficiency | Penalties / Additions to Tax | |
|------|-----------|------------|------------|
|      |           | *§ 6662(a)* | *§ 6651(a)(1)* |
| 2016 | $160,447 | $32,089 | — |
| 2017 | 3,594 | 302 | — |
| 2018 | 8,229 | 557 | $697 |

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*2]**   The deficiency resulted largely from inclusion of unreported stock sale proceeds and denied deductions for unsubstantiated business expenses. Respondent made various other income adjustments and reduced or disallowed some itemized deductions. At the close of the trial, respondent asserted a civil fraud penalty against Mr. Kamal.[2]

After concessions,[3] the issues remaining for decision are whether for 2016 petitioners (1) underreported net long-term capital gain income by $165,337; (2) underreported $2,681 of taxable interest income; (3) overreported $211 of ordinary dividend income; (4) underreported $1,000 of qualified dividend income; (5) underreported state tax refunds by $1,288; (6) received gross receipts of $335,000 in connection with Aarya Consulting, Inc. (Aarya Consulting); (7) are entitled to deduct $409,823 of trade or business expenses of Aarya Consulting; (8) are entitled to deduct a partnership loss of $64,799 from Rasoi Restaurant (Rasoi); (9) overreported their real estate tax deduction by $7,589; (10) overreported their home mortgage interest deduction by $127,627; (11) overreported their charitable contributions deduction by $39,748; and (12) overreported their miscellaneous deductions by $27,070.

We also must decide whether respondent established by clear and convincing evidence that for 2016 petitioners underreported their income and underpaid their tax and that those underpayments were attributable to Mr. Kamal's fraud, making him liable for the civil fraud penalty under section 6663.

### FINDINGS OF FACT

The facts below are derived from the pleadings, the trial testimony, and the documents admitted into evidence and include the

---

[2] Preeti Sharma did not appear for trial and was held in default with the understanding that she would receive the same result as Mr. Kamal. Respondent did not assert a fraud penalty against Ms. Sharma.

[3] Respondent conceded deficiencies and accuracy-related penalties for 2017 and 2018 and the accuracy-related penalty for 2016. Respondent also conceded that petitioners are not liable for the addition to tax for failure to timely file under section 6651(a)(1) for 2018. At trial, respondent orally moved to amend his Answer to assert that petitioner Mr. Kamal was liable for civil fraud penalties for 2016 and 2017. Later, respondent conceded that Mr. Kamal was not liable for a fraud penalty for 2017. Lastly, respondent conceded that for 2016 petitioners had net long-term capital gain of $165,337 (the notice of deficiency determined that for 2016 petitioners had long-term capital gain of $403,497).

**[\*3]** stipulated facts and documents. Petitioners were married residents of California when they timely filed their Petition.

I.    *Unreported Income*

A.    *Background*

Mr. Kamal obtained a master's degree in business administration from the University of Florida in the 1990s. Sometime later, Mr. Kamal started working at Jasper Wireless, Inc., which later changed its name to Jasper Technologies, Inc. We will refer to Mr. Kamal's employer as "Jasper" because the name change does not affect our analysis. Mr. Kamal worked for Jasper until November 2015. In 2016 Mrs. Sharma worked at Tek Systems, Inc. (Tek Systems). Mr. Kamal regularly underlines his signature.

B.    *Mr. Kamal's Stock Options*

Mr. Kamal was granted incentive stock options (stock options) in Jasper stock while employed by Jasper. He exercised some of his stock options before his departure; but when he left in November 2015, he still had unexercised and vested options to purchase 30,805 shares of Jasper stock.

In 2016 Cisco Systems, Inc. (Cisco), entered into an agreement to acquire[4] Jasper in a merger.[5] Jasper notified its stock option holders

---

[4] Jasper entered into an agreement with Cisco, Jaipur Acquisition Corp. (a wholly owned subsidiary of Cisco), and other parties whereby Jaipur Acquisition would merge with and into Jasper, with Jasper continuing as the surviving corporation and a wholly owned subsidiary of Cisco.

[5] During trial respondent sought to introduce several documents (Exhibits 19–R to 27–R) received from Cisco in compliance with the subpoena and relating to the Cisco-Jasper merger. Mr. Kamal confirmed receiving the documents from respondent before trial. These documents are hearsay, as they constitute out-of-court statements offered for their truth. *See* Fed. R. Evid. 801(c). But they are business records accompanied by a certification from the custodian of records for the business providing them and therefore satisfy an exception to the rule against hearsay. *See* Fed. R. Evid. 803(6)(D), 902(11). Mr. Kamal did not object to the admission of those documents that bore his signature (Exhibits 20–R, 21–R, 23–R, and parts of 27–R) but did object to the documents that he did not sign. Mr. Kamal did not point to any circumstances to suggest they lacked trustworthiness or were not authentic, and he testified consistently with the documents about the underlying facts related to his stock options and the Cisco-Jasper merger. We therefore admit respondent's proposed trial exhibits marked 19–R, 22–R, 24–R, 25–R, 26–R, and 27–R pursuant to the business record exception to hearsay. *See* Fed. R. Evid. 803(6).

**[*4]** about the upcoming merger and advised that if they would not be continuing their employment with Cisco or with Jasper after the merger, then their vested, unexpired, unexercised, and outstanding stock options would be converted into a right to receive an amount of cash at the time of the merger (cash-out amount). It further advised that the cash-out amount would constitute wages and would be subject to federal and state income, employment, and other tax withholdings. Stock option holders also were offered the opportunity to exercise their Jasper stock options before the closing of the merger.

Because Mr. Kamal was no longer employed by Jasper and would not be employed by Cisco, he had two choices: he could exercise his remaining stock options before the closing of the merger or he could wait and receive a cash-out amount after the closing. Mr. Kamal did both: he exercised most of his stock options in February 2016, before the merger, and after the merger he received a cash-out amount for the unexercised stock options he still held.

C.   *Amounts Mr. Kamal Received in Connection with the Merger*

On April 4, 2016, Jasper paid Mr. Kamal $101,726 which it characterized as "Bonus." After deductions for tax and other withholdings, Jasper direct deposited $57,190 into one of Mr. Kamal's personal bank accounts. Jasper reported $101,726 as wages, tips, or other compensation on Form W–2, Wage and Tax Statement, for tax year 2016. Petitioners reported this amount as compensation income on their 2016 tax return. And respondent made no adjustments to this amount.[6]

After the merger, Mr. Kamal sold the shares in Cisco he received in exchange for his Jasper stock in the Cisco-Jasper merger.[7] In April 2016 Cisco's paying agent Computershare, Inc. (Computershare), paid Mr. Kamal $396,264, which was deposited into Mr. Kamal's personal bank account. Computershare reported the $396,264 on Form 1099–B, Proceeds From Broker and Barter Exchange Transactions. Cisco also issued to Mr. Kamal Form W–2 for 2016, reporting $199,801 as "ISO Stk Option Gain." Of the $396,264 received from Cisco, petitioners reported

---

[6] Respondent claims that this was the cash-out amount paid to Mr. Kamal for the unexercised stock options.

[7] The record does not specify how Mr. Kamal came to hold Cisco stock but does support this inference.

**[\*5]** only $199,800 as income from wages on their 2016 tax return. Respondent made no adjustments to the reported amount.

D.     *Long-Term Capital Gains*

In 2016 petitioners traded stocks through the online stock-trading platform Scottrade, Inc. (Scottrade). They reported a net long-term capital loss of $6,909 on Form 8949, Sales and Other Dispositions of Capital Assets, filed with their 2016 tax return, as the result of their trading activity on Scottrade.

Scottrade reported on Forms 1099–B that petitioners had $5,039 of long-term capital gain and a capital gain distribution of $1,063, i.e., total net capital gain of $6,102 ($5,039 + $1,063). The difference in petitioners' and Scottrade's reporting resulted from petitioners' failure to report the sale of Apple, Inc. stock as reported by Scottrade on Forms 1099–B for 2016.

In 2016 petitioners also traded stocks through the online stock-trading platform E Trade Securities, LLC (E Trade), but did not report a January 4, 2016, sale of Yahoo, Inc., stock for $5,022 as shown on Form 1099–B filed by E Trade.

After concessions, respondent contends that for 2016, petitioners failed to report $165,337 of net long-term capital gain:

| | |
|---|---|
| Gain from Cisco stock sale | $154,213 |
| Gain from trading activity on Scottrade | 6,102 |
| Gain from trading activity on E Trade | 5,022 |
| **Total** | **$165,337** |

E.     *Taxable Interest*

Petitioners reported $191 in taxable interest on their 2016 tax return. Forms 1099–INT, Interest Income, from Ally Bank and Technology Credit Union, reported that in 2016 they paid Mr. Kamal interest of $382 and $2,490, respectively.

Respondent determined that for 2016 petitioners failed to report $2,681 ($2,490 + $382 − $191) of taxable interest income.

[*6]    F.    *Ordinary and Qualified Dividends*

Petitioners reported $341 in ordinary dividend income and $211 in qualified dividend income for 2016. Scottrade's Form 1099–B reported that in 2016 Mr. Kamal received $1,341 in dividends of which $1,211 were qualified.

Respondent determined that for 2016 petitioners overreported their ordinary dividends by $211 and underreported qualified dividends by $1,000.

G.    *State Tax Refunds*

Petitioners reported no income from taxable refunds, credits, or offsets of state and local income taxes on their 2016 tax return. A Form 1099–G, Certain Government Payments, filed by the California Franchise Tax Board, reported that during 2016 petitioners received a refund of state taxes of $1,288.

Respondent therefore determined that petitioners underreported their 2016 income from taxable refunds of state income taxes by $1,288.

II.    *Aarya Consulting*

A.    *Background*

In June 2016 Mr. Kamal incorporated Aarya Consulting. On Schedule C, Profit or Loss From Business, petitioners listed a business address for Aarya Consulting at their home address.

B.    *Bank Account Activity*

On June 24, 2016, Mr. Kamal opened a bank account with Citibank for Aarya Consulting (CITI 6232). The only deposits into CITI 6232 in 2016 were checks written by either Mr. Kamal or Ms. Sharma. The only checks written from CITI 6232 in 2016 were to Charles Schwab & Co., Inc., Mr. Kamal, a daycare center, Corporate Compliance Center, Ms. Sharma, the California Employment Development Department (EDD), and the California Council of Corporations. The only withdrawals other than checks from CITI 6232 in 2016 were for payments to American Express, Ally Bank, AT&T, Capital One, Comcast, Deluxe Check, EDD, the Internal Revenue Service (IRS), and payroll taxes.

[*7] On May 22, 2017, Mr. Kamal opened a checking account with Bank of America in the name of Aarya Consulting (BofA 6721).

### C. *Aarya Consulting Business Expenses*

On their 2016 tax return petitioners reported that from operating Aarya Consulting they had gross income of $335,000, expenses of $409,823, and a net loss of $74,823. The reported business expense deductions consisted of the following:

| | |
|---|---|
| Advertising | $30,487 |
| Depreciation and Section 179 | 183,600 |
| Insurance (other than health) | 2,800 |
| Legal and Professional | 30,180 |
| Meals and Entertainment | 3,555 |
| Office Expense | 3,400 |
| Other Expense | 4,660 |
| Rent / Lease – Other Business Property | 54,250 |
| Repairs and Maintenance | 7,200 |
| Supplies | 7,575 |
| Taxes and Licenses | 4,753 |
| Travel | 6,953 |
| Utilities | 5,390 |
| Wages | 65,020 |
| **Total** | **$409,823** |

In the notice of deficiency respondent determined that Aarya Consulting did not carry on any trade or business and that petitioners did not properly substantiate deductions claimed on Schedule C. Respondent removed Aarya Consulting's reported gross receipts and disallowed all expense deductions.

### III. *Rasoi Partnership Loss*

Petitioners also filed a 2016 Schedule C for Rasoi, an Indian food catering business. They reported gross income of $224,518, expenses of

[*8] $349,336, and a loss of $124,818. Aside from Mr. Kamal's vague testimony, the record does not include any evidence about Rasoi and petitioners' connection to this business. Respondent disallowed petitioners' claimed partnership loss deduction from Rasoi because they failed to show they sustained any loss.

## IV. *Itemized Deductions (Schedule A)*

### A. *Real Estate Taxes*

Petitioners claimed an itemized deduction of $18,400 for real estate taxes on their 2016 tax return. During the examination respondent determined that petitioners had paid only $10,811 in real estate taxes in 2016 and disallowed the excess deduction of $7,589 as unsubstantiated.

### B. *Interest Deduction*

On their 2016 tax return petitioners claimed an interest deduction of $149,087, consisting of home mortgage interest of $148,200 and other interest expenses of $887. Citimortgage, Inc., reported on Form 1098, Mortgage Interest Statement, that Mr. Kamal paid $20,573 of mortgage interest on petitioners' residence during 2016. This was the only real property petitioners owned in 2016.

In the notice of deficiency respondent determined that petitioners were eligible to deduct mortgage interest of $20,573 as reported on Form 1098 and disallowed the excess amount as unsubstantiated.

### C. *Charitable Contribution Deduction*

Petitioners claimed an itemized deduction for noncash charitable contributions of $45,948 on their 2016 tax return. They filed Form 8283, Noncash Charitable Contributions, claiming that in 2016 they contributed over 100 items to charities, including appreciated stock. Petitioners also deducted $7,950 for a contribution of a Toyota Camry to Vehicles for Veterans.

In the notice of deficiency respondent allowed a charitable contribution deduction of $6,200, consisting of a $500 deduction for the contribution of a Toyota Camry and $5,700 for a contribution to Second Harvest Food Bank. The remaining $39,748 respondent disallowed as unsubstantiated.

[*9]    D.    *Tax Preparation Fees and Other Miscellaneous Deductions*

On their 2016 tax return petitioners claimed a $7,500 deduction for tax return preparation fees and $19,570 for miscellaneous expenses. On a statement filed with their 2016 tax return, petitioners reported that their miscellaneous expenses consisted of the following:

| | |
|---|---:|
| Investment Advisory Fees | $4,500 |
| Attorney and Accounting Fees | 14,500 |
| IRA Custodial Fees | 570 |
| **Total** | **$19,570** |

In the notice of deficiency respondent disallowed in full petitioners' deductions for tax return preparation fees and other miscellaneous expenses as unsubstantiated.

V.    *IRS Examination*

During the examination of petitioners' 2016 tax return, Mr. Kamal submitted to the IRS revenue agent various documents to support petitioners' reporting position:

- A document titled "This General Service Agreement" dated January 10, 2016 (before Aarya Consulting was incorporated), between Rob Savalgno, the head of corporate development for Cisco Investments, and Mr. Kamal as managing director of Aarya Consulting (service agreement). Notable terms include the following: (1) Aarya Consulting will provide services on demand to Cisco; (2) the term begins on execution and lasts indefinitely; (3) the amount of compensation is "per project agreed" and payable upon completion of services; (4) Aarya Consulting is responsible for paying any Superannuation Guarantee Contributions that may be required; and (5) the agreement shall be construed under the law of the State of New South Wales and any suits and proceedings shall be brought in the State of New South Wales. The document contains signatures of Rob Savalgno, Scott Barkley, and Mr. Kamal. All three signatures are dated January 10, 2016, and all three are underlined.

- A copy of an invoice book (consisting of invoice forms to be completed and issued along with space to record the invoices

[*10]  issued) that reflects the purported issuance of ten invoices written to Cisco Systems, Inc., Cisco Inc., and Jasper:

| Invoice | To | Date | Amount |
|---|---|---|---|
| No. 529419 | Cisco Systems, Inc. | 1/25/2016 | $55,000 |
| No. 529406 | Cisco Systems, Inc. | 1/27/2016 | 55,000 |
| No. 529426 | Cisco Systems, Inc. | 2/3/2016 | 59,000 |
| No. 529415 | Jasper | 2/15/2016 | 77,000 |
| No. 529428 | Cisco Inc. | 2/27/2017 | 45,000 |
| No. 529427 | Cisco Inc. | 2/27/2017 | 55,000 |
| No. 529424 | Cisco Inc. | 2/20/2017 | 62,000 |
| No. 529425 | Cisco Inc. | 2/20/2017 | 63,000 |
| No. 529411 | Cisco Inc. | 1/15/2018 | 58,000 |
| No. 529410 | Cisco Inc. | 1/15/2018 | 57,000 |

- A copy of a receipt book with a handwritten note stating that $6,500 was paid to "Tax Genie-Income Tax Preparation" on March 30, 2016, for a "tax consultation."

- Relating to travel expenses: (1) a page from a receipt book with a handwritten note stating that $2,075 was paid to "Booking.com" on March 3, 2016; (2) a page from a receipt book with a handwritten note stating that $1,982 was paid to "American Airlines" and "Expedia.com" on September 16, 2016; (3) a page from a receipt book with a handwritten note stating that $2,425 was paid to "American Airlines" and "Hotels.com" on October 5, 2016.

- Relating to meal expenses: three pages from a receipt book with handwritten notes stating that, on various dates in 2016, $9,047 was paid to cover "Lunch Bills" and "Food Bills."

- Relating to charitable contributions: (1) a Vehicle Pickup/ Donation Acknowledgement from "Vehicles for Veterans" thanking Mr. Kamal for the donation of a Toyota Camry on December 24, 2016, and stating that Mr. Kamal "may use this receipt to take an itemized tax deduction of $500 or fair market value, whichever is lesser of the two" and (2) an email from

**[*11]** Second Harvest Food Bank, containing a customer receipt and purchase confirmation for a $5,700 donation to the Second Harvest Food Bank in 2016.

VI.   *Trial Preparation*

Mr. Kamal submitted additional documents to respondent's counsel during trial preparation:

- In support of trade or business expenses: (1) four pages from a receipt book with handwritten notes stating that on various dates in 2016, $10,220 was paid to "U.S. Foods" to cover "Food Bills"; (2) a page from a receipt book with a handwritten note stating that on October 30, 2016, $4,597 was paid to "Anderson Commercial Flooring"; (3) a page from a receipt book with a handwritten note stating that on October 4, 2016, $1,195 was paid to "Roto-Rooter Hero"; (4) a page from a receipt book with a handwritten note stating that on November 29, 2016, $1,875 was paid to "RK Electric"; (5) two pages from a receipt book with handwritten notes stating that on March 15 and October 30, 2016, $2,206 was paid to "Office Depot" to cover "Office Depot Bills"; (6) three pages from a receipt book with handwritten notes stating that on various dates in September, October, and November 2016, $49,792 was paid to "Ashley Furniture" for various items of furniture; (7) two pages from a receipt book with handwritten notes stating that in August and November 2016, $45,090 was paid to "Managed Facilities Solutions" for "office furnishing bill" and "Data Center cost for 12 months"; (8) five purported invoices issued by NetApp, Inc., to Aarya Consulting on various dates in March, September, October, and November 2016, for a total of $190,041 for sale of equipment; (9) six purported invoices issued by VMWare, Inc., to both Mr. Kamal and Aarya Consulting on various dates in March, April, June, September, November, and December 2016, for a total of $431,825 for sale of equipment.

- Purported invoices from Aarya Consulting to Cisco and Jasper:

[*12]

| Invoice | To | Date | Amount |
|---------|------|-----------|----------|
| No. 450345 | Cisco | 1/27/2016 | $55,000 |
| No. 450356 | Cisco | 1/28/2016 | 55,000 |
| No. 450435 | Cisco | 2/3/2016 | 31,000 |
| No. 450375 | Cisco | 2/3/2016 | 59,000 |
| No. 550160 | Cisco | 1/16/2017 | 65,000 |
| No. 450345 | Cisco | 1/16/2017 | 70,000 |
| No. 450780 | Cisco | 1/17/2017 | 65,000 |
| No. 450970 | Cisco | 1/17/2017 | 25,000 |
| No. 570441 | Jasper | 2/15/2016 | 45,000 |
| No. 570341 | Jasper | 2/15/2016 | 55,000 |

- A copy of a check dated September 1, 2016, from the BofA 6721 account written to Irvine Company Office Properties, Inc. (Irvine Co.), for $54,487. The check was copied with a portion of the check book used for balancing the check book still attached to the check, suggesting that the check was still in the checkbook when Mr. Kamal made the copy to submit to respondent.

- A document titled "Commercial Lease Agreement" (lease agreement), dated August 4, 2016, for the lease of commercial property at 15050 Los Gatos Blvd., Los Gatos, CA 95032, from Irvine Co. to Mr. Kamal. The lease agreement bears signatures of Mr. Kamal and Todd Hedrick, the vice president of Irvine Co. Both signatures are underlined. At the bottom of each page is a legend "Commercial Lease Agreement (Rev. 133EE24)," and on the last page, titled "General Instructions," are instructions about what to include in a commercial lease agreement.

- A letter on "Jasper Inc." letterhead, dated June 18, 2020, bearing an underlined signature of Suparna Kumar, chief financial officer, stating:

  My Name is Suparna Kumar and I am presently responsible for Payroll at Jasper Inc. I am writing this letter on behalf of Payroll at Jasper that for year 2016, Jasper paid Aarya Consulting for providing cloud business services. This service payment was incorrectly recorded in

**[\*13]** form of personal W2 for Neel Kamal for 2016. Please consider this letter in lieu of actual paperwork for Jasper payments for Aarya Consulting. Please reach out to payroll at Jasper for any questions.

- A letter on "Cisco Inc." letterhead, dated July 6, 2020, bearing an underlined signature of Kelly Kramer, head of payroll, stating:

  My name is Kelly Kramer and I am presently responsible for Payroll department at Cisco Inc. I am writing this letter on behalf of Payroll to confirm that for the year 2016, Cisco paid Aarya Consulting for providing cloud services. This services payment was incorrectly reported in form personal W2 for Neel Kamal for 2016. Please consider this letter in lieu of actual paperwork for Cisco services payments for Aarya Consulting. Please reach out to Cisco's payroll department for any questions.

VII.  *Civil Fraud Penalty*

This case was initially set for trial on May 2, 2022. On February 14, 2022, respondent filed a Motion for Continuance, offering two primary bases. First, the case was referred to the Independent Office of Appeals for a potential settlement, which required more time. Second, respondent was waiting for petitioners to respond to document requests and anticipated filing a motion for a document subpoena hearing with respect to document requests issued to Cisco and Jasper. Respondent also advised that after receiving and reviewing documents from petitioners, Cisco, and Jasper, he might move for leave to amend his answer to assert the civil fraud penalty. Petitioners objected to the Motion for Continuance.

On March 9, 2022, after receiving documents from Mr. Kamal, respondent filed a Motion for Document Subpoena Hearing. Respondent expressed doubts about the authenticity of documents received from Mr. Kamal and wanted documents directly from Cisco. Petitioners objected to this Motion as well. Respondent received documents from Cisco in compliance with the subpoena and advised us that the subpoena hearing was no longer necessary. Cisco informed respondent that it "was unable to locate any contracts with records of payment to Aarya Consulting."

We held a remote hearing on respondent's Motion for Continuance on April 13, 2022, after trying unsuccessfully to schedule a conference call with the parties, to discuss petitioners' objections to

[*14] respondent's Motion, because petitioners' written objections appeared instead to suggest they would benefit from a continuance. Mr. Kamal and respondent's counsel appeared and were heard. Mr. Kamal insisted that even though he did not yet have counsel, he would be ready for trial in three weeks. Respondent's counsel stated that he had been unable to reach petitioners and stipulate the facts of the case. In a subsequent conference call Mr. Kamal continued to object to respondent's Motion for Continuance. We delayed acting on respondent's Motion to afford petitioners time to find a representative. When the case was called from the calendar on May 2, 2022, the parties provided an agreed stipulation of facts and respondent's counsel withdrew the Motion. We proceeded to trial on May 3, 2022. Mr. Kamal did not object to respondent's withdrawal and did not himself seek a continuance (although he did seek a break in his testimony as we note below).

At the close of trial, respondent's counsel made an oral Motion to Amend the Pleadings to Conform to the Evidence and asserted a civil fraud penalty under section 6663 against Mr. Kamal. The record includes a Memorandum from Trent D. Usitalo, Associate Area Counsel, and the immediate supervisor of respondent's counsel, David Carl, dated May 3, 2022, approving the initial determination of the civil fraud penalty under section 6663(a) with respect to 2016 and 2017.

## OPINION

### I.    *Burden of Proof*

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." *See Higbee v. Commissioner*, 116 T.C. 438, 442 (2001). Petitioners have neither claimed, nor introduced credible evidence sufficient to show, that the burden of proof should shift to respondent under section 7491(a) as to any relevant factual issue. Therefore, petitioners generally bear the burden of proof.

In cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer to the income-

**[\*15]** producing activity, *Weimerskirch v. Commissioner*, 596 F.2d 358, 361 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977), or demonstrate that the taxpayer actually received income, *Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982). Once the Commissioner has met this threshold burden, the burden shifts to the taxpayer to show that the IRS determination of income was arbitrary or erroneous. *Hardy v. Commissioner*, 181 F.3d 1002, 1005 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97. The Commissioner may not rely solely on third-party information reporting if the taxpayer raises a reasonable dispute concerning the accuracy of the third-party report. *See* § 6201(d). Petitioners have not raised a reasonable dispute about the accuracy of the information reporting here.

## II.    *Unreported Income*

Respondent contends that petitioners failed to report (1) gain recognized upon the sale of Cisco stock; (2) gain from trading activity on Scottrade; and (3) gain from trading activity on E Trade.

Mr. Kamal appeared to concede these issues at trial, stating that he received and cashed a check from Cisco for $396,264. He further stated that he received the check because he "sold everything over there," "whatever shares [he] ha[d] and a majority of them were Cisco shares." Mr. Kamal also admitted that some stock sales "were missed" when his tax return was printed and filed. Mr. Kamal did not specify which stock sales he meant, but in context we understood from his testimony that he inadvertently failed to report some of his gains from his stock trading activities on Scottrade and E Trade.

Contrary to his admissions, Mr. Kamal also stated that the Forms W–2 issued by Cisco and Jasper were in error and that all the payments received from Cisco (also Jasper and Tek Systems) were of payments for business services provided by Aarya Consulting. As we explain below, Mr. Kamal failed to introduce credible evidence in support of these contentions.

### A.    *Unreported Amounts Received from Cisco*

A taxpayer must recognize gain on the sale of property in an amount equal to the difference between the amount realized and the taxpayer's basis in the property. §§ 1001, 1012; *see also O'Boyle v. Commissioner*, T.C. Memo. 2010-149, 2010 WL 2766818, at \*3, *aff'd per curiam*, 464 F. App'x 4 (D.C. Cir. 2012). Taxpayers bear the burden of establishing their basis in the property. *See* Rule 142(a); *O'Boyle v.*

**[\*16]** *Commissioner*, 2010 WL 2766818, at \*3. Gain from the sale of a capital asset, such as stock, may constitute long-term capital gain if certain conditions are met. *See* §§ 1(h), 1221(a)(1), 1222(3).

Mr. Kamal admitted that after the merger he sold his shares for $396,264 to Cisco, which then issued Form W–2 reporting that Mr. Kamal had $199,801 of compensation income. Petitioners correctly reported that amount on their 2016 tax return as ordinary income, and respondent made no adjustment to that amount. But petitioners failed to report the remainder of the $396,264 received from Cisco.

Respondent contends that because the sale proceeds exceeded Mr. Kamal's basis in Cisco stock, petitioners realized income that they did not report. Petitioners have neither submitted any evidence of nor argued that they had any basis in their Cisco stock. In his posttrial brief respondent conceded that in computing unreported capital gain on the Cisco stock sold, petitioners were entitled to include (1) the amount Mr. Kamal paid to exercise his Jasper stock options ($42,280) and (2) the amount of ordinary income Mr. Kamal recognized from disqualifying dispositions of stock ($199,801). Respondent also conceded that the gain recognized with respect to the sale of Cisco stock was long-term capital gain.

Because Mr. Kamal admitted receiving the $396,264 and petitioners failed to introduce any evidence to dispute respondent's determination, we sustain respondent's determination (after concessions) that for 2016 petitioners had capital gain income equal to $154,213 with respect to Cisco stock sale, which they failed to report.

B.    *Scottrade and E Trade*

The Forms 1099–B filed by Scottrade and E Trade support respondent's determination that for 2016 petitioners had net unreported long-term capital gain of $6,102 from their transactions through Scottrade and gain from a sale of Yahoo, Inc., stock for $5,022 through E Trade. Petitioners did not argue that respondent's determinations were arbitrary or erroneous and did not introduce any evidence but rather Mr. Kamal vaguely conceded that some amounts may have been omitted.

We therefore sustain respondent's determinations with respect to unreported capital gain income reported by Scottrade and E Trade.

**[\*17]**  C.    *Taxable Interest*

Petitioners did not offer any argument or evidence to dispute respondent's determination that they failed to report $2,681 of interest income for 2016. Accordingly, we sustain respondent's interest income determination.

D.    *Ordinary and Qualified Dividends*

Petitioners did not offer any argument or evidence to dispute respondent's determination that they overreported 2016 ordinary income by $211 and underreported qualified dividend income by $1,000. Accordingly, we sustain respondent's ordinary and qualified dividend income determinations.

E.    *State Tax Refunds*

Petitioners did not offer any argument or evidence to dispute respondent's determination that they failed to report $1,288 of state tax refund income for 2016. Therefore, we sustain respondent's determination with respect to their unreported state tax refund income.

III.    *Aarya Consulting and Schedule C Business Expenses*

A few months after Mr. Kamal sold his Cisco stock, he incorporated Aarya Consulting. Although admitting he received $396,264 from Cisco because he "sold everything over there," Mr. Kamal contends that the amounts paid by Cisco and Jasper to Mr. Kamal, and by Tek Systems to Mrs. Sharma, were payments to Aarya Consulting for business services performed for these companies in 2016. Mr. Kamal further contends that the Forms W–2 issued by the three companies to petitioners were issued by mistake and that petitioners reported these amounts as compensation income on their 2016 tax return by mistake. Petitioners also claimed substantial business expense deductions on their 2016 tax return, which offset all of Aarya Consulting's alleged business income and generated a loss.

Respondent counters that Mr. Kamal incorporated Aarya Consulting and reported fictitious business income and business expenses to offset the income he received from Cisco and Jasper. Respondent contends that Aarya Consulting did not conduct a trade or business and therefore petitioners are not entitled to business deductions. And, respondent argues, even assuming Aarya Consulting

**[\*18]** did conduct a trade or business in 2016, petitioners failed to substantiate its business expense deductions.

We first must decide whether Aarya Consulting carried on any trade or business in 2016, and, if so, whether it is entitled to any of the business expense deductions petitioners claimed on their 2016 tax return.

A.      *Carrying on a Trade or Business Requirement*

Neither the Code nor the regulations provide a generally applicable definition of the term "trade or business." *Commissioner v. Groetzinger*, 480 U.S. 23, 27 (1987). But "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and . . . the taxpayer's primary purpose for engaging in the activity must be for income or profit." *Id.* at 35. The taxpayer must establish that he "engaged in the activity with 'the predominant, primary or principal objective' of realizing an economic profit independent of tax savings." *Giles v. Commissioner*, T.C. Memo. 2006-15, 2006 WL 237503, at * 7 (quoting *Wolf v. Commissioner*, 4 F.3d 709, 713 (9th Cir. 1993), *aff'g* T.C. Memo. 1991-212). Sporadic activities do not rise to the level of a "trade or business." *See Commissioner v. Groetzinger*, 480 U.S. at 35.

Determining the existence of a trade or business "requires an examination of the facts in each case." *Id.* at 36 (quoting *Higgins v. Commissioner*, 312 U.S. 212, 217 (1941)). Here, the facts establish that petitioners were not actively engaged in a trade or business.

According to Mr. Kamal, all payments that Jasper, Tek Systems, and Cisco reported on Forms W–2, were in fact payments to Aarya Consulting for "business services." But at trial Mr. Kamal had trouble explaining what exactly Aarya Consulting did. For example, when counsel for respondent asked Mr. Kamal to explain what type of services Aarya Consulting performed for Cisco, Mr. Kamal responded that he "met a bunch of people" and that those people were "celebrities from Cisco investing in . . . [his] business." He explained that "Cisco celebrities" gave him money to invest in his business and then Cisco reported that on Form W–2 as compensation in error. He claimed that the money received from Cisco was for "raising capital" but was also "a payment for business services." When asked to explain in more detail what services Aarya Consulting provided to Cisco in 2016, Mr. Kamal responded that it "provided . . . equipment as well as customizing

**[\*19]** whatever they need." Mr. Kamal could not remember the name of the person he worked with at Cisco but stated that it was a vice president of Cisco's capital department. He also could not remember whether Cisco made payments into his personal or Aarya Consulting's business bank account.

Mr. Kamal testified that Aarya Consulting was "providing certain electronic equipment" and "computing services" to Jasper. And he explained that it provided the same services to Jasper and Tek Systems as to Cisco. Mr. Kamal could not remember whether Jasper made payments into his personal or Aarya Consulting's business bank account. And he did not remember who he worked with at Tek Systems.

We did not find Mr. Kamal to be a credible witness. His testimony was inconsistent, confusing, and difficult to follow. He was defensive and evasive from the start, and he appeared increasingly uncomfortable and agitated as cross-examination exposed more holes in his story. His testimony about Aarya Consulting did not match the documents provided by third parties. It did not stand up to logic and was not credible. After a series of questions and repeated admonishments, Mr. Kamal answered questions by stating that he did not remember or refused to answer altogether.

In addition to his testimony, Mr. Kamal submitted a copy of a service agreement, invoices, and letters, which he claimed were from Cisco and Jasper employees. These documents are poor attempts at fabrication.

The service agreement between Aarya Consulting and Cisco, dated January 10, 2016, predates the incorporation of Aarya Consulting. It does not specify the type of services or terms of compensation. It adopts the law of the Australian State of New South Wales even though, according to Mr. Kamal, Aarya Consulting never operated or had clients in Australia. The service agreement is allegedly signed by the head of corporate development of Cisco, Rob Savalgno, but both Mr. Kamal's and Mr. Savalgno's signatures are underlined and appear similar. Mr. Kamal admitted that he always underlines his signature. Both names appear to have been signed by the same person.

The invoice book Mr. Kamal submitted during the audit listed various amounts allegedly charged by Aarya Consulting to Cisco and Jasper. Later, during preparation for trial, he also submitted to counsel for respondent invoices that he claimed were submitted to Jasper and

[*20] Cisco. Invoice numbers, dates, and amounts recorded in the invoice book do not match the invoices themselves. And the total amount of the invoices ($525,000) does not match the total amount recorded in the invoice book ($586,000). Notably, neither the notes in the invoice book nor the invoices mention Tek Systems. Aarya Consulting and petitioners' bank account records do not reflect any payment of any of the amounts indicated on the invoices. Furthermore, Cisco responded to a document request from respondent that it was unable to find any contracts or records of payments between Cisco and Aarya Consulting.

In support of his claim that Jasper's and Cisco's Forms W–2 were issued in error, Mr. Kamal submitted two identical letters, allegedly issued and signed by Jasper and Cisco representatives in June and July 2020, respectively. Each letter essentially states that Aarya Consulting provided services to the company for which it was paid, but the "payment was incorrectly recorded in form of personal W2 for Neel Kamal for 2016." Each letter asks the reader to "please consider this letter in lieu of actual paperwork" to support the payments made to Aarya Consulting. As on the service agreement, both names on these letters are underlined as if signed by the same person.

Mr. Kamal also submitted a number of invoices allegedly issued to Aarya Consulting by other companies in 2016. Notably, some of the invoices predate the incorporation of Aarya Consulting. Also, the total amount of those invoices is over $600,000, but neither petitioners' nor Aarya Consulting's bank account records show a single payment to any of those companies.

Nothing in the record indicates that Aarya Consulting provided any services to Jasper, Cisco, Tek Systems, or anyone else. The evidence that is *in* the record, coupled with Mr. Kamal's evasive and confusing testimony, easily supports respondent's argument that in 2016 Aarya Consulting was not carrying on any trade or business and that Mr. Kamal fabricated documents to support the deduction of fictitious business expenses to offset income from the stock sale.

### B.    *Substantiation Requirement*

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Because we conclude that Aarya Consulting was not carrying on any trade or business, it is not allowed to deduct any business expenses. However, even if we concluded that Aarya

**[\*21]** Consulting was operating a business in 2016, we still would hold that petitioners failed to properly substantiate the alleged business expenses.

Taxpayers bear the burden of proving that they are entitled to deductions claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). Therefore, they are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. § 6001; *Higbee*, 116 T.C. at 440. Under the *Cohan* rule, the Court may estimate the amount of the expense if the taxpayer is able to demonstrate that he has paid or incurred a deductible expense but cannot substantiate the precise amount, as long as he produces credible evidence providing a basis for the Court to do so. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). For the Court to estimate the amount of an expense, there must be some basis upon which an estimate can be made. *Norgaard v. Commissioner*, 939 F.2d 874, 879 (9th Cir. 1991), *aff'g in part, rev'g in part* T.C. Memo. 1989-390. Otherwise, an allowance would amount to "unguided largesse." *Id.* (quoting *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957)).

Certain business expenses (including travel, lodging, and meal expenses) are subject to the heightened substantiation requirements of section 274(d). Section 274(d) supersedes the *Cohan* rule. Temp. Treas. Reg. § 1.274-5T(a). Section 274(d) contemplates that no deduction or credit shall be allowed on the basis of a taxpayer's mere approximations or unsupported testimony. *Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969).

To meet the requirements of section 274(d), a taxpayer must substantiate the following by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place of the travel or use, and (3) the business purpose of the expense. To substantiate by adequate records, the taxpayer must provide: (1) an account book, log, or similar record and (2) documentary evidence, which together are sufficient to establish each element with respect to an expenditure. Temp. Treas. Reg. § 1.274-5T(c)(2)(i). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. *Id.* subpara. (1). If a

**[\*22]** taxpayer cannot substantiate each element of an expense with adequate records, he may do so "by other sufficient evidence," namely "[b]y his own statement, whether written or oral, containing specific information in detail as to such element" and "[b]y other corroborative evidence sufficient to establish such element." *Id.* subpara. (3).

Fictitious expenses reported with respect to nonexistent trades or businesses are not deductible. *See, e.g., Weber v. Commissioner*, T.C. Memo. 1994-307 (finding taxpayer liable for civil fraud where he concealed illegal kickback income by reporting income and deducting personal expenses on Schedule C filed with respect to nonexistent business).

Here, petitioners failed to substantiate Aarya Consulting's business expense deductions. First, petitioners did not even attempt to substantiate the following deductions: advertising ($30,487), depreciation ($183,600), insurance ($2,800), legal and professional expenses ($30,180), other expenses ($4,660), taxes and licenses ($4,753), utilities ($5,390), supplies ($7,575), and wages ($65,020).[8] Thus, we sustain respondent's determination to disallow these deductions as unsubstantiated.

Second, petitioners' attempt to substantiate the other business expenses deducted on their 2016 tax return fails to satisfy even the most lenient substantiation rules and falls well short of the heightened requirements in section 274(d), which apply to their meal and entertainment and travel expenses. To substantiate expenses for office ($3,400), repairs and maintenance ($7,200), meals and entertainment ($3,555), and travel ($6,953), petitioners submitted pages from a receipt book with various handwritten notes stating for example "Food Bills," "U.S. Foods," "Office Depot Bills," "Booking.com," "Hotels.com," "Ashley Furniture," etc. The handwritten amounts do not match the amounts they reported on Schedule C. Petitioners failed to submit actual bills or invoices issued to Aarya Consulting or documents confirming that any of the indicated amounts were actually paid. They also failed to provide corroborating and credible testimony explaining the amounts, the times and dates, or the business purposes for any of these expenses.

---

[8] For example, Mr. Kamal testified that in 2016 he and Ms. Sharma were the only two employees at Aarya Consulting. Petitioners reported on their 2016 tax return that Aarya Consulting paid them wages of approximately $6,000. But on the attached Schedule C they claimed a business expense deduction of over $65,000 for wages paid by Aarya Consulting to its employees.

**[\*23]** To substantiate the expense for rent ($54,250), Mr. Kamal submitted a lease agreement for the lease of commercial property in Los Gatos, California. The document bears signatures of Mr. Kamal and the vice president of the leasing company; both signatures are underlined. At the bottom of each page there is a form number "Commercial Lease Agreement (Rev. 133EE24)," and the last page, titled "General Instructions," provides instructions about what should be included in a commercial lease agreement.

Mr. Kamal also submitted a check for $54,487 dated September 1, 2016, allegedly issued from the BofA 6721 account written to the leasing company. But on September 1, 2016, the BofA 6721 account did not exist; it was opened almost a year later, in May 2017. The copy of the check submitted as evidence of payment was made while the check was still in the check book. Lastly, Aarya Consulting and petitioners' bank account records do not reflect this, or any other payment made to the leasing company.

At trial Mr. Kamal was defensive and evasive when respondent asked pointed questions related to the lease agreement and rent payments. Mr. Kamal could not describe details about the alleged office space, did not remember details about signing the agreement, and could not explain why he never listed the Los Gatos address on any of petitioners' tax returns. He became increasingly agitated when counsel for respondent asked whether he drafted and signed the agreement for both parties. Plainly uncomfortable answering these simple, direct questions, Mr. Kamal asked that the Court adjourn trial to next day; the Court gave the parties a lunch break instead.

C.    *Conclusion*

Aarya Consulting did not carry on any trade or business in 2016; therefore, petitioners were not entitled to deduct any of its reported business expenses. They also failed to properly substantiate those business expense deductions. We therefore sustain respondent's disallowance of deductions for Aarya Consulting's business expenses.

IV.    *Rasoi Partnership Loss*

Petitioners filed an additional Schedule C in 2016 for Rasoi reporting a loss of $124,818. However, they did not deduct this amount but instead claimed a $64,799 nonpassive partnership loss deduction from Rasoi on Schedule E, Supplemental Income and Loss, of their 2016 tax return. Petitioners failed to submit credible evidence to support their

**[\*24]** entitlement to this loss deduction. Mr. Kamal's testimony on this issue was confusing and vague. The record contains no other evidence to connect petitioners to this restaurant or otherwise support their claiming any associated loss deduction on their 2016 tax return. Thus, we sustain respondent's disallowance for lack of substantiation.

## V.    *Itemized Deductions (Schedule A)*

In the notice of deficiency, respondent disallowed as unsubstantiated $7,589 of petitioners' claimed $18,400 deduction for real estate taxes. Petitioners offered no evidence substantiating the amount respondent disallowed. Accordingly, we sustain respondent's determination.

Using third-party reporting information, respondent disallowed $127,627 of petitioners' claimed $148,200 home mortgage interest deduction. Petitioners failed to challenge the determination and did not submit any evidence to substantiate the entire amount of mortgage interest deduction claimed. Therefore, we sustain respondent's determination.

Next, petitioners claimed a $45,948 deduction for noncash charitable contributions. During the audit petitioners submitted to respondent (1) a letter from "Vehicles for Veterans," stating that Mr. Kamal could use the letter to claim an itemized deduction of $500 and (2) an email from Second Harvest Food Bank, confirming a $5,700 donation by petitioners in 2016. Accordingly, respondent allowed a deduction of $6,200 ($500 + $5,700) and disallowed the remaining $39,748. Petitioners failed to submit credible evidence substantiating the disallowed amount. Thus, we sustain respondent's disallowance of the unsubstantiated charitable contribution deductions.

Finally, petitioners also claimed an itemized deduction of $7,500 for tax preparation fees and $19,570 for miscellaneous expenses. In support petitioners offered copies of the purported receipt book with handwritten notes "Tax Genie-Income Tax Preparation." But again, Mr. Kamal offered nothing but his evasive and vague testimony to corroborate these expenses. Thus, we sustain respondent's disallowance of itemized deductions for tax preparation fees and miscellaneous expenses.

**[\*25]** VI.  *Civil Fraud Penalty*

     A.  *Respondent's Motion to Amend the Pleadings*

At the end of the trial respondent orally moved under Rule 41(b) to conform the pleadings to the evidence presented and alleged that Mr. Kamal is liable for the civil fraud penalty under section 6663(a) for 2016. We first must decide whether to grant respondent's Motion.

Whether to allow an amendment to conform pleadings to the evidence is a matter within the discretion of the Court. *See, e.g.*, *Estate of Quick v. Commissioner*, 110 T.C. 172, 178 (1998), *supplemented by* 110 T.C. 440 (1998); *Arberg v. Commissioner*, T.C. Memo. 2007-244; *Bhattacharyya v. Commissioner*, T.C. Memo. 2007-19. We must examine whether the opposing party would suffer unfair surprise or prejudice if a motion to amend was granted. *See, e.g.*, *Estate of Quick*, 110 T.C. at 178.

Respondent informed Mr. Kamal on several occasions before the start of the trial that he might assert a civil fraud penalty depending on the evidence gathered in discovery and offered at trial. Respondent's Motion for Continuance stated that the parties might need additional time to prepare for trial, explaining that one of the reasons for requiring more time was the possible assertion of the section 6663 civil fraud penalty. We encouraged Mr. Kamal to reconsider his objection to respondent's Motion for Continuance, but he insisted that he would be prepared.

Furthermore, respondent bases his Motion to Amend the Pleadings on Mr. Kamal's own testimony and documents Mr. Kamal produced to the IRS and respondent's counsel during the audit and while the parties were preparing for trial. Mr. Kamal cannot reasonably claim to be surprised by his own testimony and documents. *See Daoud v. Commissioner*, T.C. Memo. 2010-282, *aff'd*, 548 F. App'x 441 (9th Cir. 2013).

Finally, we gave Mr. Kamal an opportunity to respond to respondent's Motion to Amend the Pleadings in posttrial briefs (even reminding the parties of the briefing deadlines in an Order issued posttrial), but Mr. Kamal did not file any briefs. We therefore grant respondent's Motion and allow him to assert the civil fraud penalty against Mr. Kamal for 2016. We next must determine whether Mr. Kamal is liable for the section 6663 civil fraud penalty.

**[\*26]** B.     *Penalty Approval Under Section 6751(b)(1)*

The Commissioner bears the burden of production with respect to an individual taxpayer's liability for any penalty, requiring the Commissioner to come forward with sufficient evidence indicating that the imposition of the penalty is appropriate. *See* § 7491(c); *Higbee*, 116 T.C. at 446–47. As part of that burden, the Commissioner must produce evidence of compliance with the procedural requirements of section 6751(b)(1). *See Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). Section 6751(b)(1) requires the initial determination of certain penalties to be "personally approved (in writing) by the immediate supervisor of the individual making such determination." *See Graev*, 149 T.C. at 492–93.

The U.S. Court of Appeals for the Ninth Circuit, to which any appeal in this case would ordinarily lie, *see* § 7482(b)(1)(A), has held that section 6751(b)(1) permits written supervisory approval at any time before assessment of the penalty, provided that at the time of the approval, a supervisor still has discretion whether to approve the penalty determination, *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1071 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020).

Respondent's counsel made the initial determination to assert the civil fraud penalty for 2016 against Mr. Kamal. Respondent's counsel's immediate supervisor approved that initial determination on May 3, 2022, before it was asserted in respondent's oral Motion to Amend the Pleadings. The approval was timely, and respondent has satisfied section 6751(b) under the standard established by the Ninth Circuit.

C.     *Fraudulent Intent*

Section 6663 imposes a penalty of 75% of an underpayment of tax if any part of the underpayment is due to fraud. Once the Commissioner establishes that part of an underpayment is due to fraud, the entire underpayment is treated as "attributable to fraud," except to the extent the taxpayer establishes that some part is not. § 6663(b). This section does not apply with respect to a spouse filing a joint return unless some part of the underpayment is due to the fraud of the spouse. § 6663(c). Here, respondent alleged that only Mr. Kamal is liable for fraud.

The Commissioner must prove fraud by "clear and convincing evidence." Rule 142(b); *see* § 7454(a); *Castillo v. Commissioner*, 84 T.C. 405, 408 (1985). To carry that burden, the Commissioner must show that

**[\*27]** (1) an underpayment of tax exists for the year in issue and (2) some part of the underpayment is attributable to fraud. *See* §§ 6663(a), 7454(a); *DiLeo v. Commissioner*, 96 T.C. 858, 873 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992).

Respondent contends that the underpayment resulting from Mr. Kamal's failure to report long-term capital gains and claiming business expense deductions for Aarya Consulting is attributable to Mr. Kamal's fraud. Respondent has clearly and convincingly demonstrated that Mr. Kamal has an underpayment of tax. The first element of the civil fraud penalty therefore has been established.

We next must determine whether Mr. Kamal had the requisite fraudulent intent. Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose of evading a tax believed to be owing. *Petzoldt v. Commissioner*, 92 T.C. 661, 698 (1989). Fraud is never presumed and must be established by independent evidence of fraudulent intent. *See Baumgardner v. Commissioner*, 251 F.2d 311, 322 (9th Cir. 1957), *aff'g* T.C. Memo. 1956-112. Fraud may be shown by circumstantial evidence because direct evidence of a taxpayer's fraudulent intent is seldom available. *See Petzoldt*, 92 T.C. at 699. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *See Niedringhaus v. Commissioner*, 99 T.C. 202, 210 (1992). Fraudulent intent may be inferred when a taxpayer files a document intending to conceal, mislead, or prevent the collection of tax. *Durland v. Commissioner*, T.C. Memo. 2016-133, at \*79.

Courts often rely on various "badges of fraud" to find circumstantial evidence of fraud. *See Bradford v. Commissioner*, 796 F.2d 303, 307 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601. These badges focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as (1) understating income; (2) failing to maintain adequate records; (3) offering implausible or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to the taxpayer's tax return preparer; (8) offering false or incredible testimony; (9) filing false documents, including filing false income tax returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash. *See id.* at 307–08; *Parks v. Commissioner*, 94 T.C. 654, 664–65 (1990); *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988). The existence of any one badge is not dispositive, but the existence of several badges is persuasive circumstantial evidence of fraud. *Niedringhaus*, 99 T.C. at 211.

**[*28]** Several badges of fraud are evident in this case: Mr. Kamal understated income, failed to maintain adequate records, offered implausible and inconsistent explanations, failed to cooperate with the IRS or respondent's counsel, and offered vague, conflicting, defensive, and unbelievable testimony. Mr. Kamal failed to report a substantial amount of long-term capital gain income and deducted fictitious business expenses for a phantom business. To support his implausible story, Mr. Kamal submitted numerous documents that bear hallmarks of fabrication, he could not explain who drafted those documents, and he became increasingly uncomfortable and defensive every time he was asked direct questions related to their drafting or signing. His theories were inconsistent and illogical, designed to offset the income he received from Cisco.

Respondent has demonstrated by clear and convincing evidence that Mr. Kamal had fraudulent intent. Mr. Kamal has neither argued nor shown that any amount should not be subject to the civil fraud penalty. Accordingly, the Court holds that Mr. Kamal is liable for the section 6663 civil fraud penalty on the entire underpayment of tax.

To reflect the foregoing,

*An appropriate order and decision will be entered.*